Marsha GODWIN, Plaintiff–Appellant,

v.

HUNT WESSON, INC., a Delaware corporation, Defendant–Appellee.

Nos. 96–56830.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1998.

Decided Aug. 11, 1998.

As Amended Aug. 31, 1998.

---

Linda Hart Chandler, Sunil, Lewis, Vatave, Newport Beach, California, for the plaintiff-appellant.

Sharyl P. Bilas, Gibson, Dunn & Crutcher, Irvine, California, for the defendant-appellee.

Before: SCHROEDER, FLETCHER,* and Harry PREGERSON, Circuit Judges.

SCHROEDER, Circuit Judge:

The issue in this case is a familiar one: what showing of pretext by a plaintiff in a sex discrimination suit is sufficient to overcome a defendant's motion for summary judgment, where the defendant asserts that its refusal to promote the plaintiff was based on legitimate, nondiscriminatory reasons? This is an issue that has troubled the courts in their endeavors to follow the Supreme Court's decisions in this field. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Anderson v. Baxter Health-care Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994) ("The federal courts ... have not been entirely clear on what constitutes a showing of pretext.").

The district court granted the employer's summary judgment motion, holding that the plaintiff did not offer sufficient evidence that the employer's conduct was discriminatorily motivated. A close review of our decisions reveals that in this circuit a plaintiff who offers substantial evidence that the employer's proffered reasons were not reliable, *see, e.g., Lindahl v. Air France,* 930 F.2d 1434, 1438–39 (9th Cir.1991), or direct evidence of discrimination, *see e.g., Cordova v. State Farm Ins.,* 124 F.3d 1145, 1150 (9th Cir. 1997), has made a sufficient showing to create triable issues with respect to the employer's motivation. The plaintiff-appellant in this case did both. We therefore reverse.

## BACKGROUND

The plaintiff-appellant, Marsha Godwin, had been a member of the Hunt Wesson sales force for nine years when two marketing manager positions became available in the Rosarita and Wesson brands division. Alcy Grimes, the most senior female executive for the defendant, resigned from her

position as senior marketing manager for the Wesson brand, creating a vacancy. Jim Ruschman, the marketing manager for the Rosarita brand, took her position, and therefore, the Rosarita marketing manager position became available. In addition, Ruschman persuaded Ron Guthier, the Director of Marketing, to create another Wesson marketing manager position to assist Ruschman. Godwin applied for both the Rosarita and Wesson positions.

Guthier and Ruschman had primary responsibility for selecting the qualified candidates for the marketing manager positions. Guthier and Ruschman considered Godwin and Jim Rossi for the Wesson position and Godwin and Mark Smith for the Rosarita position. They selected the male candidates over Godwin for both jobs.

Although Guthier and Ruschman offer facially nondiscriminatory explanations for their selection of the male candidates, Godwin contends she has direct and circumstantial evidence to support her allegations that Guthier and Ruschman wanted to give the positions to males. She relies upon evidence that the selected candidates would reside on the almost all-male 10th floor and that the only female marketing manager on the 10th floor, Louise De PreFontaine, had caused dissension among the all-male employees, in support of her position that Guthier and Ruschman discriminatorily refused on account of her gender to consider Godwin seriously for either marketing position.

Godwin seeks general and punitive damages for gender discrimination in employment in violation of the California Fair Employment and Housing Act (FEHA) Cal. Gov't Code 33 12.900–12.955.

## DISCUSSION

■ Because California law under the FEHA mirrors federal law under Title VII, federal cases are instructive. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996); *Clark v. Claremont Univ. Ctr. & Graduate Sch.,* 6 Cal.App.4th 639, 662, 8 Cal.Rptr.2d 151 (1992). We review the district court's decision to grant summary

---

* Judge Fletcher was drawn to replace Judge Gibson. She read the briefs and listened to a tape of oral argument held on April 8, 1998.

judgment de novo. *See Lindahl,* 930 F.2d at 1436. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *See Cordova,* 124 F.3d at 1146.

The parties debate the required showing to create a triable issue with respect to the employer's motivation at the so-called "pretext" stage of the *McDonnell Douglas* shifting analysis. The *McDonnell Douglas* analysis imposes on the plaintiff an initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. "The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas,* or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994) (citations omitted). "The requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* at 889.

■ Here, Godwin unquestionably established the *McDonnell Douglas* factors for a prima facie case: (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. *See Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 n. 7 (9th Cir.1991); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (1973).

Once Godwin established her prima facie case, the burden then shifted to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct. *See id.* Hunt Wesson, in its motion for summary judgment, produced evidence that it chose the male candidates because of their better experience and more "easygoing" personalities.

The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination. *See St. Mary's,* 509 U.S. at 502, 113 S.Ct. 2742. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The district court required Godwin to present substantial direct evidence of discrimination at the pretext stage. After reviewing our cases, we conclude that this ruling is incorrect for it conflates the standards we have articulated for two different types of evidence—circumstantial and direct—available at the pretext stage to prove discriminatory motive.

■ Confusion is understandable, because although we have articulated two different ways in which a plaintiff may prove pretext, we have not expressly recognized the difference. Our law stems from the Supreme Court's holding that the plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

We have held, clearly, that a plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing. *See Wallis,* 26 F.3d at 890. We have been less clear about what additional showing is required. We have said that the plaintiff "need produce very little evidence of discriminatory motive to raise a genuine issue of material fact." *Lindahl,* 930 F.2d at 1438; *see also, Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 870 (9th Cir.1996) (quoting *Lindahl*); *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir.1995) (quoting *Lindahl*); *Sischo–Nownejad,* 934 F.2d at 1111 (when a plaintiff introduces "direct or circumstantial" evidence "a factual question will almost always exist with respect to any claim of a nondiscriminatory

reason"); *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir.1985) ("[a]ny indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder").

We have also said, however, that the plaintiff must produce "specific, substantial evidence of pretext." *See Bradley*, 104 F.3d at 270; *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir.1995); *Wallis*, 26 F.3d at 890; *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983); *see also, Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir.1997) ("plaintiff must prove by a preponderance of the evidence that the proffered reasons are pretexts" in a Title VII retaliation case); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.1996) (evidence must be "sufficiently probative").

■ These apparently differing standards, however, are reconcilable, for they depend upon the nature of the plaintiff's evidence. When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. As we said in *Lindahl*, it need be "very little." *Lindahl*, 930 F.2d at 1438 (direct evidence of sexual stereotyping where employer believed that the female candidates get "nervous" and "easily upset"); *see also Cordova*, 124 F.3d at 1150 (direct evidence of race discrimination where employer referred to a Mexican–American employee as a "dumb Mexican."); *Sischo–Nownejad*, 934 F.2d at 1111 (direct evidence of sex stereotyping where employee referred to female plaintiff as "an old warhorse" and to her students as "little old ladies"). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.1994) (alterations in original, quotations and citations omitted).

■ As did the plaintiffs in *Cordova* and *Lindahl*, Godwin produced evidence of direct discrimination. *See Cordova*, 124 F.3d at 1150; *Lindahl*, 930 F.2d at 1438. She presented a statement made by Ruschman to Hunt Wesson's national sales manager, Bernie Stipetic, that Guthier "did not want to deal with another female after having dealt with ... Louise De PreFontaine." This comment directly suggests the existence of bias and no inference is necessary to find discriminatory animus. *See Cordova*, 124 F.3d at 1149; *Davis*, 14 F.3d at 1085.

■ Hunt Wesson raises a number of arguments to counter that evidence, but none are availing at this stage. Hunt Wesson is incorrect in asserting that this statement is inadmissable hearsay. We have held that an admission by an agent within the scope of his employment is admissable. *See Breneman v. Kennecott Corp.*, 799 F.2d 470 (9th Cir.1986) (multiple hearsay is admissable if each of the speakers was involved in the employer's decision). Hunt Wesson also disputes that Stipetic was involved in the employment decision, but this dispute is for the trier of fact to resolve. Furthermore, the comment is not a "stray remark" that is "uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination," which we have held to be insufficient. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir.1990); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993) (statement of corporate officer having no direct relationship to plaintiff that "[W]e don't necessarily like grey hair" in age discrimination suit not sufficient to withstand summary judgment); *Nidds*, 113 F.3d at 918–19 (employer's "old timers" comment was ambivalent and not tied to termination and thus insufficient to establish age discrimination). Ruschman's comment was not ambivalent and it is related directly to the positions that Godwin sought.

The record also contains direct evidence of discriminatory animus toward women as employees. Alcy Grimes, the former senior marketing manager for the Wesson brand, testified that while she was giving a presentation at a sales meeting, someone gave her a "Barbie doll kit" containing two dildos and a bottle of Wesson oil. She also testified that the company sponsored hunting and fishing trips to which she was not invited and other women did not attend. Godwin testified that the president of the company, Marshall Ransam, made derogatory comments about women at meetings. In sum, Godwin's direct evidence of discriminatory animus satisfies the required showing at the pretext stage. *See Cordova*, 124 F.3d at 1149.

In those cases where direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex. *See Bradley,* 104 F.3d at 270 (no evidence beyond that produced for the prima facie case presented); *Collings,* 63 F.3d at 834 (no evidence beyond that produced for the prima facie case presented); *Wallis,* 26 F.3d at 890 (no evidence beyond that produced for the prima facie case); *see also Nidds,* 113 F.3d at 918 (circumstantial evidence of shifting explanations are not "sufficiently probative").

In this case, Godwin did show substantial evidence of the unreliability of the reasons proffered by the employer. All of the evidence supporting the employer's proffered reasons came from statements, depositions, and declarations prepared after the employment decision was made and while this litigation was in progress. This alone is not disqualifying. "Simply because an explanation comes after the beginning of litigation does not make it inherently incredible." *Lindahl,* 930 F.2d at 1438. The evidence in this record of the contemporaneous reasons for the selection of the male applicant, however, is inconsistent in material ways with the statements upon which the employer relies.

In their declarations prepared for litigation, Guthier and Ruschman explain that they selected Rossi for the Wesson position because he had demonstrated creativity in marketing and they believed he would work well with both sales and marketing personnel. They explain further that they did not select Godwin because Guthier had concerns about Godwin's ability to get along with Ruschman and the sales force. As to the Rosarita position, Guthier and Ruschman assert that they selected Smith not only because of his marketing experience, but also because of his easygoing personality.

Although the employer's declarations and depositions indicate that "creativity" was the most important criterion for selecting the male Wesson marketing manager, the criterion of "creativity" does not appear in the contemporaneous memorandum prepared at the time of the selection. Although "shifting explanations are acceptable when viewed in the context of other surrounding events ... such weighing of the evidence is for a jury, not a judge." *Payne v. Norwest Corp.,* 113 F.3d 1079, 1080 (9th Cir.1997).

Moreover, the recommendations received during the review of Godwin described her repeatedly as getting along well with others and also referred to her as being "creative." In fact, the only negative recommendations with respect to Godwin's personality in the contemporaneous notes of her application reflect an inability to get along with persons on the "tenth floor." The tenth floor housed all the marketing executives' offices. Because all of the marketing executives were male with only one exception, we cannot assume those generic negative references are necessarily gender neutral.

Godwin also presented evidence that one of the male candidates had received poor evaluations on his personality. Facts tending to show that the chosen applicant may not have been the best person for the job are probative as they "suggest that [the explanation] may not have been the real reason for choosing [the chosen applicant] over the [plaintiff]." *Lindahl,* 930 F.2d at 1439.

Godwin's indirect evidence of discriminatory motive, as well as her direct evidence was sufficient to raise genuine issues of fact as to whether Hunt Wesson's nondiscriminatory explanations were the true reasons or whether they masked discriminatory motives. *See St. Mary's,* 509 U.S. at 502, 113 S.Ct. 2742; *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993). We therefore conclude that summary judgment should not have been granted.

### CONCLUSION

The district court's decision is REVERSED and REMANDED. Each side shall bear its own costs on appeal.