Kevin N. HOOKS, Plaintiff–Appellant,

v.

**LOCKHEED MARTIN SKUNK WORKS**, a division of Lockheed Martin Corporation; Does 1 Through 15, individually & in their official capacity, Defendants–Appellees.

No. 99–56860.

D.C. No. CV 98–8348–GHK(CWx).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 2001.

Decided June 20, 2001.

* The Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

Before BOOCHEVER and SILVERMAN, Circuit Judges, and GEORGE *, District Judge.

## MEMORANDUM **

Kevin M. Hooks appeals the district court's grant of summary judgment to Lockheed Skunk Works ("Lockheed") in his action alleging racial discrimination in employment. We review the grant of summary judgment de novo, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219–20 (9th Cir.1998), relying on federal decisions to interpret the California Fair Employment and Housing Act. *See id.* at 1219; *Nelson v. United Techs.*, 74 Cal.App.4th 597, 88 Cal.Rptr.2d 239, 249 n. 5 (Ct.App. 1999). Because the parties are familiar with the facts, we do not repeat them here.

### I. *Racial discrimination*

■ Hooks must first establish a prima facie case of racial discrimination by showing that: (1) he belongs to a protected group, (2) he applied and was qualified for a job which was open for applications, (3) he was rejected, and (4) the position remained open after his rejection and the employer continued to seek applicants from persons of the plaintiff's qualifications. *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir.1991). Hooks established a prima facie case.

The defendant must then articulate a legitimate, nondiscriminatory reason for the employment decisions. *Godwin*, 150 F.3d at 1220. "[T]he defendant is only required to set forth a legally sufficient

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

explanation." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir.1999). Lockheed satisfied its burden by stating that Hooks lacked mechanical engineering skills and experience necessary for the job.

The burden then shifts back to Hooks to present specific and substantial evidence that the proffered reason is a merely a pretext for discrimination. *Id.* Hooks argues that pretext is demonstrated by circumstantial evidence because Lockheed provided inconsistent reasons for its refusal to promote him, Hooks is more qualified than Michael Walker, and Lockheed conducted a "sham" investigation of Hooks' administrative complaint of racial discrimination.

### A. *Inconsistent Reasons*

"[F]undamentally different justifications for an employer's action would give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that neither of the official reasons was the true reason." *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir.1997) (quotations omitted).

Patrick Foley documented the reasons for not promoting Hooks in an August 1996 "Disposition." He stated that Hooks "lacks experience in design development of aircraft electrical systems; lacks experience in aircraft electrical cable and harness design; lacks experience in aircraft electrical power systems; needs improvement in oral and written communication." Hooks contends these reasons differ materially from those expressed in Foley's later letter dated November 7, 1997 and other documents.

■ The Disposition states that Hooks "lacks experience in aircraft electrical cable and harness design." The November 7th letter states the exact opposite, that Hooks has experience in "wiring cable and harness design." The statements are definitely inconsistent, which Lockheed concedes. Nevertheless, this single inconsistency related to one of four reasons that Hook was not promoted is not so substantial or material as to create a triable issue that Lockheed intended to discriminate. *See Godwin*, 150 F.3d at 1222 (circumstantial evidence of pretense based on inconsistencies must be specific and substantial to create triable issue of discriminatory intent).

■ Foley's November 7th letter states that "Hooks *has* experience in service bulletin writing, CATIA proficiency, deficiency reports and writing skills." (Emphasis added). A June 19, 1998 letter from Leo Hill to the EEOC states the exact opposite: "According to Mr. Hooks' Manager, Patrick Foley, Mr. Hooks *lacks* experience in service bulletin writing, CATIA proficiency, deficiency reports and writing skills." We agree with the district court that this is not an inconsistency but a typographical error substituting "lacks" for "has." Hill's letter referenced Foley's letter as an "Attachment," and attached a copy. Under these circumstances, a reasonable jury could not believe Hill was intentionally trying to misrepresent the contents of Foley's letter.

### B. *Better Qualifications*

Hooks also argues he was more qualified than Walker for the position. "Facts tending to show that the chosen applicant may not have been the best person for the job are probative as they suggest that the explanation may not have been the real reason for choosing the chosen applicant over the plaintiff." *Id.* (brackets, internal quotation marks omitted).

■ Hooks fails to identify any aspect in which he was more qualified than Walker. Further, there is no need for Lockheed to demonstrate that Walker was substantially more qualified than Hooks for the job. It is Hooks' job to produce evi-

dence of his superior qualifications, and "[t]he closer the qualifications of the candidates, the less weight the court should give to the perceived differences in qualifications in deciding whether the proffered explanations were pretextual." *Blue v. Widnall,* 162 F.3d 541, 546 (9th Cir.1998) (quotations omitted). Hooks has not demonstrated that he was clearly more qualified for the position.

### C. *"Sham" Investigation*

■ A "sham" investigation can be evidence of a company's lack of good faith efforts to comply with anti-discrimination law. *See Bruso v. United Airlines, Inc.,* 239 F.3d 848, 860–61 (7th Cir.2001). Hooks has not presented substantial evidence that the investigation was actually a "sham." Hill contacted all of the relevant people and, at least, provided most of the relevant documents requested by the EEOC. Contrary to Hooks' contention, Hill's failure to conduct in-person interviews of the relevant people does not appear improper. Nor does Hill's failure to provide the EEOC with all requested generic company information and all documents regarding Walker's qualifications suggest the investigation was a sham. If additional documentation was necessary for resolution of the complaint, the EEOC could have issued a subpoena. It did not.

### D. *Favorable Employment Decision*

■ Lockheed points out that Frank Bates, one of the two managers who decided not to give Hooks the job, gave Hooks a promotion two years earlier. When an individual makes a favorable employment decision and then, within a short period of time, the same actor makes an adverse employment decision, "a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996).

We conclude that Hooks did not present substantial evidence of pretext.

### II. *Retaliation*

■ Hooks argues that Lockheed gave him a negative performance rating and a lower ESG job ranking because he filed complaints with the EEOC and DFEH. To establish a prima facie case of retaliation, Hooks must show that: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464–65 (9th Cir.1994).

### A. *Negative Performance Evaluation*

■ Hooks argues that Lockheed gave him a negative performance evaluation in retaliation for his complaining about discrimination. A negative performance evaluation may constitute an adverse employment action. *See Kortan v. California Youth Authority,* 217 F.3d 1104, 1112 (9th Cir.2000).

■ It is not apparent that the 1997 evaluation was materially lower than the two previous evaluations. The only difference is that, in one of the ten categories, Hooks was rated "highly competent" in 1997 as opposed to "distinguished" in 1996. Moreover, the 1997 evaluation was actually *higher* than the one in 1995.

Hooks contends that the 1997 evaluation is nevertheless adverse because it contains a comment that "it is imperative that Kevin continue his formal education." His 1996 evaluation, however, reflected a similar sentiment: "Kevin should consider continuing his education" and should "complete[ ] at least one engineering class." This difference is not material. Likewise, the comment that Hooks' "judgment could be improved" is not materially negative, considering that it was followed by the statement that he "has the potential and ability to assume increasing [sic] demanding assignments."

## B. *Employee Rankings*

Hooks argues that his ranking at or near the bottom of his job classification in Lockheed's Classification Ranking List constitutes an adverse employment action because it renders him vulnerable to being laid off. Lockheed responds that merely increasing an employee's vulnerability to layoff does not tangibly affect the terms and conditions of employment. At least one California court has indicated otherwise. *See Heard v. Lockheed Missiles & Space Co.*, 44 Cal.App.4th 1735, 52 Cal. Rptr.2d 620, 624, 633–34 (Ct.App.1996) (low ranking, combined with other adverse actions, was sufficient to support inference of racial discrimination).

Hooks was ranked at or near the bottom both before and after complaining about discrimination. The September 1997 ranking, the first after Hooks complained of discrimination, is essentially identical to the previous rankings. The major change occurred in March 1998 when the number of employees in Hooks' job classification increased to nine. While Hooks again was placed near the bottom, this time there were six employees ahead of him. However, there were also two employees below him. It is not apparent that these subsequent rankings rendered Hooks more vulnerable to being laid off and Hooks does not provide an explanation.

Hooks also claims that Hill's investigation of Hooks' retaliation complaint was a "sham" to cover up the retaliatory motives of the decision-makers. For the same reasons that Lockheed's investigation of Hooks' discrimination complaint does not add to Hooks' showing of pretext, Lockheed's investigation of Hooks' retaliation complaint does not add anything either. Hooks also repeatedly suggests that Hill's request that the managers provide "written rationale" for Hooks' rankings was really an instruction to "fabricate reasons" to cover up the retaliation. It is not apparent that providing "written rationale" means "fabricate reasons" and Hooks does not offer any evidence to suggest that it does.

Finally, Lockheed points out that it offered Hooks a promotion to the same pay grade level as the position Hooks was initially denied. Hooks applied for and was offered the position, but declined to accept Lockheed's offer. Lockheed's offer of a promotion is inconsistent with an intent to retaliate against Hooks or set him up for a layoff.

Hooks did not present sufficient evidence of an adverse employment action. AFFIRMED.