Susan **FUNDUKIAN**, Plaintiff–Appellant,

v.

**UNITED BLOOD SERVICES,**
Defendant–Appellee.

No. 00–15949.

D.C. No. CV–96–01960–MS.

United States Court of Appeals,
Ninth Circuit.

Submitted March 16, 2001.[*]

Decided Aug. 31, 2001.

---

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

[*] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2). Accordingly, we deny United Blood Services' motion for oral argument.

Before CHOY, SKOPIL, and FERGUSON, Circuit Judges.

MEMORANDUM [**]

Susan Fundukian ("Fundukian") appeals pro se from the district court's dismissal for lack of jurisdiction of her claim for unlawful discrimination and from the district court's summary judgment in her claim for retaliatory discharge, both brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She also appeals from the denial of her motion to compel discovery. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Discrimination Claims

In her complaint, Fundukian claims that her former employer, United Blood Services ("UBS"), discriminated against her because of her sex, race, and age. The district court dismissed these claims for lack of subject matter jurisdiction because it found that she failed to exhaust her administrative remedies. Fundukian argues that she sufficiently raised these claims in her Equal Employment Opportunity Commission ("EEOC") charge and in her subsequent request for review.

■ We review a district court's conclusion that it lacks subject matter jurisdiction de novo, and we review the findings of fact relevant to that conclusion for clear error. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 968 (9th Cir.1999), *cert. denied,* 530 U.S. 1203, 120 S.Ct. 2196, 147 L.Ed.2d 232 (2000). To establish federal subject matter jurisdiction over Title VII claims, a plaintiff must first exhaust his or her administrative remedies before seeking federal adjudication of those claims. 42 U.S.C. § 2000e–5(f); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994). However, a federal court may assert subject matter jurisdiction over claims not explicitly raised in the EEOC complaint if the claims are "like or reasonably related to the allegations of the EEOC charge." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973). The EEOC charge must be clear enough to notify the agency of the legal theory being argued

[**] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

and the operative facts at issue. *Ong v. Cleland,* 642 F.2d 316, 318 (9th Cir.1981).

■ The district court's findings that Fundukian did not raise the issue of race based discrimination in her EEOC charge and that the allegation of retaliation specified in that charge did not set forth a basis in age, sex, or "hiring practices" were not clearly erroneous. The text of Fundukian's EEOC charge alleges that UBS discriminated against her because she "openly complained of race discrimination in that: [she] was unwilling to not focus on a minority marrow donor recruitment" and because she "spoke out in opposition to discrimination." Charge of Discrimination, June 26, 1992. These statements comport with the fact that she only checked the box on the charge form that indicated that retaliation was the basis for her claim. Nowhere in the text of the charge does she suggest that UBS acted against her because of her race, age, or sex.

Following the dismissal of her charge for lack of substantial evidence, Fundukian similarly did not elaborate on her allegedly ignored "reverse discrimination" theory. Instead, her request for review raises only allegations of racism against the National Marrow Donor Program (against which she did not bring a charge).

■ Because Fundukian did not explicitly raise the issues of discrimination based on race, sex, or age before the EEOC, we must determine if those claims are "like or reasonably related" to the allegations that were raised in her charge, *see Oubichon,* 482 F.2d at 571, and if the agency should have been on notice about them. *See Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 730 (9th Cir.1984). To determine whether additional allegations are like or reasonably related to allegations in an EEOC charge, a court must ask wheth-

er the investigation that would be reasonably expected to develop from the charge would have encompassed those additional allegations. *Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1476 (9th Cir.1989); *Serpe v. Four–Phase Sys., Inc.,* 718 F.2d 935, 937 (9th Cir.1983).

First, the issues of sex and age discrimination are not contained anywhere in Fundukian's EEOC charge. Without some mention of these issues, a reasonable EEOC investigation into whether UBS retaliated against Fundukian for protesting a lack of minority recruitment would not have explored whether her age or sex were the causes of her termination. Second, regarding racial discrimination, Fundukian's EEOC charge alleges that UBS discharged her in retaliation for her focus on the recruitment of non-Caucasian bone marrow donors. The new allegation found in her complaint states that she was terminated because she was Caucasian. These two charges are not only unrelated, but counterintuitive. Based on the charge filed, a reasonable EEOC investigation should not have included possible termination based on "reverse discrimination." *Cf. Yamaguchi v. United States Dep't of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997); *Serpe,* 718 F.2d at 937.

For the same reasons that these claims were not reasonably related to one another, they were insufficient to put the agency on notice as to the newly introduced legal theories and the facts at issue. *See Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d at 730; *Ong,* 642 F.2d at 320. Because any EEOC investigation of the first issue would consider different evidence than would an investigation of the second, the original allegation does not provide sufficient notice of the new allegation that Fundukian raised for the first time in district court.

We conclude that Fundukian failed to exhaust her EEOC remedies as to her claims of discrimination based on race, sex, and age. Thus, we affirm the district court's decision that it lacked subject matter jurisdiction.

## II. Retaliation

The district court granted summary judgment in favor of UBS on Fundukian's remaining claim for retaliatory discharge. This claim arises under section 704(a) of Title VII, which makes it an "unlawful employment practice" to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a) (1994).

In the context of summary judgment, the plaintiff bears the initial burden of making a prima facie case of discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir.1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To establish a prima facie case of retaliation, Fundukian must demonstrate (1) that she engaged in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the adverse employment action. *See Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755 (9th Cir.1997). Because Fundukian is unable to establish the first element of the prima facie case—that she engaged in a protected activity—summary judgment against her was proper. *See id.*

■ Fundukian argues on appeal that her alleged complaints to her supervisor and to community members constituted "opposition" and that UBS's discriminatory recruitment of minority donors and her supervisor's comments about her race impairing her job performance constituted an "employment practice" under Title VII. However, Fundukian's conduct does not constitute opposition under the statute.

Although the affidavits in the record show informal complaints to her supervisor about general inadequacies in UBS's minority donor recruitment program, these complaints do not indicate racial discrimination. Generalized complaints about her job conditions and how these conditions were affecting her efficiency do not constitute protected opposition because they do not relate to conduct made unlawful by Title VII. *See* 42 U.S.C. § 2000e–3(a); *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir.1988) ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation.").

Further, Fundukian's only complaints that addressed racial discrimination were informal complaints to third parties, outside of the employment relationship and, therefore, outside the ambit of Title VII. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 n. 4 (9th Cir.1978). Finally, the comments that Fundukian made to third parties and that were allegedly passed back to her supervisor similarly do not constitute opposition. They concerned general discomfort with racial attitudes and did not address racism in employment practices. Additionally, Fundukian confided these vaguely defined concerns about lack of support and poor interest in minority recruitment with persons who were not in a position to influence UBS policies. *Cf. United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir.1998) (en banc); *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 896 (3d Cir.1993). These allegations, even if taken as true, are too attenuated to constitute "opposition" because no one at UBS would have reasonably interpreted them as complaints of racially-based employment discrimination.

Because Fundukian did not engage in opposition under the statute, we decline to consider whether the conduct she claims to have challenged constituted an employment practice. Similarly, we decline to reach UBS's asserted justification for Fundukian's termination or her claim that such justifications were merely pretext for retaliation. *See McDonnell Douglas Corp.*, 411 U.S. at 802–04.

### III. Motion to Compel

Fundukian argues that the district court wrongly "denied [her] critical discovery which was necessary to reply to defendant's motion for summary judgment." Through the disputed interrogatories, Fundukian sought information about the race of bone marrow donors recruited by UBS and other agencies from 1991 to the present, and detailed information about UBS's minority recruitment budget. She alleges that these documents would provide evidence to rebut one of UBS's reasons for termination—her failure to recruit minority bone marrow donors.

■ This court reviews a district court's discovery rulings for an abuse of discretion. *United States v. Chon*, 210 F.3d 990, 994 (9th Cir.), *cert. denied*, 531 U.S. 910, 121 S.Ct. 259, 148 L.Ed.2d 187 (2000). We conclude that the district court acted within its discretion in denying Fundukian's motion to compel discovery because the materials she sought were not material to the dispute and were not in UBS's possession.

Although Fundukian asserts that the statistics found in the documents will rebut the contention that she was not an effective minority recruiter, the record shows that her termination was not primarily grounded in her productivity as a recruiter, but in her unacceptable workplace behavior. Additionally, the in-depth information that Fundukian is seeking about

UBS and other agencies goes well beyond relation to any issues involving her recruitment performance during her brief time at UBS.

Further, there was no abuse of discretion because the information sought by Fundukian is no longer in the possession of UBS. The records that UBS retained after the sale of its assets to a competitor do not include donor statistics, and the UBS statistics cannot be separated from those of the buyer. Thus, the district court was well within its discretion in denying Fundukian's motion to compel. *See* Fed.R.Civ.P. 34 ("Any party may serve on any other party a request . . . to produce . . . any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served. . . .").

### IV. Costs and Attorneys' Fees on Appeal

■ UBS has requested that this court provide costs and attorneys' fees on appeal, presumably under our authority to award costs and attorneys' fees as a sanction for bringing a frivolous appeal. *See* Fed. R.App. P. 38; 28 U.S.C. § 1912; *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir.1989). We decline to impose sanctions against Fundukian because her claims were not wholly without merit. *See Wilcox v. Commissioner*, 848 F.2d 1007, 1009 (9th Cir.1988); *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1417 (9th Cir.1984).

AFFIRMED.

FERGUSON, Circuit Judge, concurring.

I concur in the decision of the court, but write separately to set forth facts which makes the decision clearly understood.

On September 30, 1991, United Blood Service a not-for-profit organization that provides volunteer blood services and

blood products to hospitals, hired Fundukian as a Senior Community Representative in its Chicago, Illinois division. Fundukian's primary responsibilities were to establish bone marrow drives in minority communities and to recruit minority bone marrow donors. Fundukian is Caucasian.

During her three months of employment with UBS, Fundukian's supervisor documented at least ten incidents of unsatisfactory work performance, including instances of tardiness, inappropriate comments during meetings with members of the community, failure to promptly send correspondence, failure to complete follow-up correspondence, failure to organize a meeting, and failure to show up as required at a bone marrow drive. Additionally, during her three months at UBS, Fundukian recruited thirty-two bone marrow donors. In comparison, her replacement recruited approximately 736 donors in his first six months.

On December 16, 1991, UBS terminated Fundukian's employment, citing failure to attend two scheduled meetings, disorganization, failure to follow through on assignments, and resistance to changing behavior after counseling. The record shows that Fundukian received five oral notices and three written notices of undesirable conduct while she worked for UBS.