**NEUNG KANG, an individual, Plaintiff—Appellant,**

v.

**PB FASTENERS, a Corporation doing business in California, Defendant—Appellee,**

and

**Merle Oglesby, an individual, Defendant.**

No. 06–55913.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2008.

Filed Feb. 27, 2008.

Eric L. Dobberteen, Esq., Arnod & Porter, Los Angeles, CA, for Defendant.

Before: PREGERSON, ARCHER *, and WARDLAW, Circuit Judges.

## MEMORANDUM **

In this wrongful termination action, Neung Kang appeals the district court's decisions to (1) grant summary judgment for his former employer, PB Fasteners ("PBF"), and (2) strike his motion to amend his complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### I

■ Even assuming that Kang established a prima facie case of employment discrimination under 42 U.S.C. § 1981, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the district court correctly concluded that Kang failed to raise a triable issue of fact as to whether PBF's proffered legitimate non-discriminatory reasons were pretextual. PBF asserts that it reopened the night shift in January 2003 to increase efficiency and selected Kang to fill the slot because he had the experience necessary to run a shift by himself, his language difficulties made it harder for him to interact with customers during the day, and the

night shift manager, Il Kil, was a Korean speaker. PBF terminated Kang in June 2003 when it laid off three of the five members of Kang's NDT department. The department lost most of its work when PBF lost its necessary government qualifications, and the department's lead worker, Mario Lira, was retained instead of Kang because Lira "was more proficient at the job" and spoke better English.

Kang offers no direct evidence, and only weak circumstantial evidence, that PBF's proffered reasons are pretextual. *See Godwin v. Hunt Wesson*, 150 F.3d 1217, 1220, 1222 (9th Cir.1998) (noting that although "very little" evidence of direct discrimination is needed to survive summary judgment, circumstantial evidence must be "specific" and "substantial"). In particular, there is no evidence suggesting that Robert Herber, the supervisor directly responsible for Kang's transfer and termination, bore any racial animus toward him. Kang's own testimony demonstrates that Herber did not call Kang a "stupid Korean."[1] Nor is there evidence that Herber was aware of any discriminatory treatment toward Kang by his co-workers, except one incident that occurred before Herber became Kang's supervisor. Herber's consideration of Kang's language skills as a factor in both decisions was not improper: Kang admits that he speaks English poorly and that his job required him to interact with customers, and Herber testified to having witnessed Kang's language difficulties affect his job performance.[2] Finally,

---

* The Honorable Glenn L. Archer, Jr., Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Kang testified that Herber actually said, "You don't speak English, and you've been here for 30 years. You don't know how to work." These statements, however hurtful, are not probative of racial animus.

2. It is also noteworthy that one of the three employees laid off was Herber's own son-in-law, further suggesting that the selection was based purely on the employees' qualifications rather than on improper motives.

any procedural irregularities in Kang's transfer and termination were, as the district court noted, "minor at best," and do little, if anything, to suggest that Herber acted with discriminatory intent.

Because Kang failed to raise a triable issue as to pretext, the district court properly granted summary judgment for PBF as to his § 1981 claims. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

## II

■ The district court also correctly granted summary judgment for PBF as to Kang's state law contract claims. Considering the totality of the circumstances, Kang was an at-will employee and no implied-in-fact employment contract was created. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 335–37, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (noting that California employees are presumed to be employed at will, but that parties can contract, explicitly or implicitly, to place greater limitations on an employer's termination rights).

PBF's 2001 Employee Guide hurts, rather than helps, Kang's claim that an implied-in-fact contract was created. The first page of the guide specifies that PBF "is an at will employer" and that "an employee may be terminated without cause" at the company's discretion. The guide provides examples of misconduct for which "[e]mployees may be disciplined, up to and including termination," but it specifically provides that the list is not exhaustive and nothing suggests that an employee could not be terminated for reasons other than misconduct. Finally, the document makes clear that "[n]othing in this Guide is intended to alter the at-will sta-

tus of employment with the company." Accordingly, a reasonable fact finder could not rationally determine that the guide formed the basis for an implied-in-fact agreement; indeed, it supports the proposition that Kang was an at-will employee. *Cf. id.* at 346, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (finding an implied contract where an employer's documents contained ambiguous and contradictory statements such that "a fact finder could rationally determine that despite its general disclaimer, [the employer] had bound itself to the specific provisions of these documents").

■ Kang's thirty years of employment with PBF, over which time he allegedly "received merit raises, promotions, and highly favorable performance reviews," does not, standing alone, create an implied-in fact contract. *Id.* at 342, 100 Cal. Rptr.2d 352, 8 P.3d 1089 ("Absent other evidence of the employer's intent, longevity, raises and promotions ... do not, *in and of themselves*, ... constitute a contractual guarantee of future employment security." (emphasis in original)); *but see Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677, 680, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (noting that an "employee's longevity of service" can be a factor as to the existence of an implied-in-fact contract). As the California Supreme Court has noted, "[a] rule granting such contract rights on the basis of successful longevity alone would discourage the retention and promotion of employees." *Guz*, 24 Cal.4th at 342, 100 Cal.Rptr.2d 352, 8 P.3d 1089.

Because Kang presents no evidence of an implied contract other that the employee guide and his long tenure of service, the district court properly granted summary judgment as to Kang's contract claim.[3]

---

3. Because Kang has failed to raise a triable issue as to the existence of an implied-in-fact contract, his related claim based on the im-

plied covenant of good faith and fair dealing also fails. *See Guz*, 24 Cal.4th at 349–50, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (noting that the

## III

Nor did the district court abuse its discretion in striking Kang's motion to amend his complaint for failure to comply with a local rule. Kang's attorney informed opposing counsel of his intention to amend the complaint only ten days before filing the motion, thereby violating Local Rule 7–3, which requires counsel to meet and confer with opposing counsel at least twenty days prior to filing any motion that, under the Federal Rules of Civil Procedure, need not be filed within a specified period of time. *See* Fed.R.Civ.P. 15(a) (governing motions to amend complaints and not setting forth any specific period of time within which they must be filed). Moreover, even if the local rule did not apply, the district court would not have abused its discretion by striking the motion because it was untimely and filed with undue delay.

## IV

The district court's grant of summary judgment for PBF and decision to strike Kang's motion to amend his complaint are therefore

**AFFIRMED.**

implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement").