**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 31 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMY COBURN, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> PN II, INC., doing business as Pulte Homes; PULTE HOME CORPORATION; PULTE HOMES, INC., <br><br> Defendants - Appellees. | No. 09-15837 <br><br> D.C. No. 2:07-cv-00662-KJD-LRL <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted March 10, 2010
San Francisco, California

Before: HUG, REINHARDT and BYBEE, Circuit Judges.

Plaintiff-Appellant Amy Coburn was Area Vice President for Product

Development for Defendant-Appellee PN II, Inc., the Nevada Area operations of

Pulte Homes, Inc., a Michigan homebuilding corporation (collectively, "Pulte").

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

After Coburn was terminated, she sued Pulte for: (1) unlawful sex discrimination under 42 U.S.C. § 2000e-2(a) and Nevada Revised Statute § 613.330;[1] and (2) unlawful retaliation under 42 U.S.C. § 2000e-3(a) and Nevada Revised Statute § 613.340. The district court granted summary judgment in favor of Pulte with respect to Coburn's discrimination and retaliation claims, and Coburn now appeals both of these decisions.[2] We review these determinations *de novo*, drawing all reasonable inferences in favor of Coburn in order to decide whether Coburn has established a genuine issue of material fact for trial. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). We reverse.

I

We apply a system of shifting burdens in discrimination cases. "The plaintiff bears the initial burden of establishing a prima facie case." *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140 (9th

---

[1] A claim for unlawful discrimination under Nevada Revised Statute § 613.330 is assessed under the applicable federal anti-discrimination law. *See Apeceche v. White Pine County*, 615 P.2d 975, 977-78 (Nev. 1980).

[2] Coburn also briefly argues that Pulte failed to comply with Rule 56-1 of the Local Rules of Practice for the District of Nevada by "fail[ing] to provide the required concise statement of material facts that it alleges are not in dispute." We reject this argument, as district courts have "considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).

Cir. 2001). If the plaintiff meets this burden, the burden shifts to the defendant to prove that the plaintiff was discharged "for a legitimate, nondiscriminatory reason." *Id.* at 1141. If the defendant makes such a showing, "[t]he burden then shifts back to [the plaintiff] to show that [the defendant's] proffered reason was a pretext for discrimination." *Id.*

## A

To state a prima facie case of discrimination, a plaintiff must show that: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). The district court held that Coburn failed to establish the second and fourth elements. We hold that Coburn satisfied the "minimal" degree of proof necessary to establish these elements at the summary judgment phase. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

### 1

Coburn presented sufficient evidence to raise a genuine issue of material fact as to whether she was performing according to Pulte's legitimate expectations. First, she presented evidence that she was given excellent performance reviews for

3

her first year of employment under Sheryl Palmer, and was awarded a salary increase and a bonus due to this performance. This evidence is important because of Coburn's allegation that Pulte actually made the decision to fire her at the time it fired Palmer, and simply because of the striking disparity between Coburn's performance evaluations before and after Palmer was fired, from which a jury could reasonably infer that there were illegitimate factors playing into the evaluations of Coburn. Second, Coburn presented evidence that she was performing well after Palmer was fired, including Matt Koart's statement that she had completed her 2005 MBO goals with "flying colors" and Sean Degen's statement that Coburn's performance was "excellent and superior to [her] male counterparts." The jury could reasonably give Coburn's evidence of her positive accomplishments more weight than Koart's and Degen's highly subjective criticisms of Coburn's "leadership," "credibility," and the "perception" of Coburn's performance.

In holding that Coburn failed to establish the second element of her *prima facie* case, the district court appeared to rely completely on the fact that Coburn failed to demonstrate a mastery of Pulte's design manual. However, the question of whether Coburn was performing according to Pulte's legitimate expectations requires an analysis of her performance as a whole, and a jury could reasonably

4

have placed little weight on Coburn's failure to memorize an intricate product manual in light of her host of other accomplishments. Rather than viewing the evidence in the light most favorable to Coburn, the district court seemed to fully accept Pulte's contentions regarding Coburn's performance. This was error.

2

The district court provided two reasons for holding that Coburn failed to establish that similarly situated males were treated more favorably: (1) Coburn's male predecessor and her male counterpart in Arizona were terminated for poor performance; and (2) of the seven female executives in Coburn's Las Vegas office who eventually left Pulte, only Palmer and Coburn were terminated for performance reasons.

Coburn presented sufficient evidence to raise a triable issue of fact as to this *prima facie* element. Coburn presented evidence that the four males on Palmer's original executive team were neither terminated for performance reasons nor given poor performance ratings. In contrast, three females from Palmer's team were terminated, and one female had been receiving lower performance ratings at the time of her resignation than she had previously. Moreover, Coburn alleged that only women were invited to a meeting in which Patrick Beirne, according to Coburn, berated the female executives and stated that he "was tired of the 'General

5

Hospital' atmosphere in Las Vegas." Finally, the fact that Coburn was replaced with a male is especially important evidence to demonstrate that similarly situated males were treated more favorably. The jury was entitled to weigh these facts against Pulte's evidence that Coburn's male predecessor (who was fired before Palmer) and her male counterpart in Arizona (who never worked in the Nevada Area) were terminated for poor performance.

B

Coburn concedes that Pulte satisfied its burden of providing a legitimate, non-discriminatory reason for her termination by alleging that Coburn was terminated because of her poor performance. Thus, the burden shifts back to Coburn to show that Pulte's non-discriminatory reason for termination was a pretext for discrimination, *see Godwin*, 150 F.3d at 1220, which Coburn may satisfy "using either direct or circumstantial evidence," *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). We need not address whether Coburn has presented direct evidence of discrimination, because Coburn has presented sufficient circumstantial evidence to survive summary judgment.

First, the district court erred in applying the "same-actor inference" to Coburn's case. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996). Although Degen was involved in both the hiring and firing of Coburn,

6

he was not the only person involved in these decisions and was not even Coburn's direct supervisor at the time of these decisions. Rather, Coburn reported directly to Palmer at the time of her hiring and directly to Koart at the time of her firing. Thus, it was unreasonable for the district court to assume that a lack of discriminatory animus at the time of Coburn's hiring makes it unlikely that discriminatory animus was present at the time of her firing. Moreover, the termination of Coburn did not "occur within a short period of time" after her hiring, *id.* at 270-71, but rather occurred almost two years after she was hired.

Coburn has presented "specific and substantial" circumstantial evidence to survive summary judgment, *Coghlan*, 413 F.3d at 1095, most of which is similar to the evidence constituting her *prima facie* case, *see Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000). First, by raising a genuine issue of fact as to the quality of her performance, Coburn has presented evidence that Pulte's "proffered explanation for the adverse action"—Coburn's performance—"is unworthy of credence." *Coghlan*, 413 F.3d at 1095 (quotation marks omitted). Second, Coburn's evidence (discussed above) "that similarly situated male employees were treated more favorably is itself probative of pretext." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1092-93 (9th Cir. 2008). Finally, various alleged comments by males in Pulte bolster Coburn's case that the performance rationale

7

for her termination was a pretext: (1) Degen's supposed reaction when Coburn complained to him about the meeting with Beirne ("you say yes sir, may I have another, yes sir, may I have another"); (2) Degen's statement that Petruska "looks at every female in this division and completely tied them to [Palmer]"; and (3) Beirne's "General Hospital" comment. Although Petruska and Beirne were not directly involved in the firing of Coburn, a jury could reasonably determine that these executives had some influence on the decision of their subordinates—Koart and Degen—to fire Coburn, and that therefore this decision was influenced to some degree by gender discrimination. Viewing the totality of Coburn's evidence, we hold that district court erred in granting summary judgment to Pulte on Coburn's discrimination claim.

## II

The burden-shifting scheme in a retaliation case is much the same as that in a discrimination case. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997). "In order to make out a prima face case of retaliation, a plaintiff must show that (1) she was engaging in protected activity, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." *Bergene*, 272 F.3d at 1140-41. Coburn indisputably satisfied the first two elements. She alleged two forms of

8

protected activity: voicing opposition to Beirne's purportedly discriminatory behavior and complaining to Degen about Petruska's comment that he was tired of the "whiny bitches in Las Vegas."[3] She alleged three adverse employment actions: negative performance evaluations, being placed on a performance improvement plan ("Work Plan"), and her termination. However, the district court held that Coburn failed to establish the element of a causal link between her protected activity and the adverse employment actions. We disagree.

We "have held that causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Davis*, 520

---

[3] For the purposes of Coburn's discrimination claim, the "whiny bitches" comment is inadmissible hearsay. Coburn alleged that she had learned of this comment from Palmer, who had allegedly heard it from Degen, who had allegedly heard it from Petruska. Palmer could testify in court about a statement that Degen said Petruska made to him under the exception to the hearsay rule for admissions by party-opponents, because Degen (a national vice president) had authority to make admissions on behalf of Pulte and this statement goes against the interests of Pulte. *See* FED. R. EVID. 801(d)(2). However, Palmer did not submit any sworn testimony to the district court that she heard about the "whiny bitches" statement from Degen, and Coburn may not rely upon the possibility of Palmer testifying about this statement in court to satisfy summary judgment. Furthermore, Coburn's *own* sworn testimony that she heard this statement from Palmer is inadmissible, because Palmer herself is not a party-opponent; rather, she was fired from Pulte.

However, regarding Coburn's *retaliation* claim, the district court erred in holding that the "whiny bitches" comment is inadmissible. For the purposes of this claim, the comment is not offered to prove the truth of the matter asserted—that is, to prove that Petruska actually said it—but simply as evidence that Coburn voiced opposition to a statement that she considered to be sexually discriminatory and suffered retaliation as a result.

F.3d at 1094 (quotation marks omitted). The timing of the adverse employment actions—all three of which, importantly, are causally related to each other—is evidence from which a reasonable jury could infer causation. The meeting with Beirne occurred on June 22, 2005, and Coburn immediately expressed her opposition to Machado and Degen. On December 5, 2005, less than six months following this opposition, Koart sent Coburn an email criticizing her, and on December 19, 2005, Degen gave Coburn a "below expectations" performance evaluation. Coburn told Degen about Petruska's "whiny bitches" comment on February 13, 2006, and Degen placed Coburn on the Work Plan that same day, about eight months after Coburn's voiced opposition to Beirne's comments.[4] Most importantly, Coburn was terminated on April 25, 2006, a little over two months after she told Degen about the "whiny bitches" comment. All of these time periods

---

[4] The district court noted that although Degen emailed the Work Plan to Coburn on the same day that she told him about the "whiny bitches" comment, "the email references a conversation he had with her concerning the plan a week earlier," and "Degen testified that it took him approximately 30 days to draft." Thus, the district court concluded that there could not have been a causal link between Coburn's complaint about the "whiny bitches" comment and the Work Plan. The district court is technically correct, but this point does not seriously undermine an inference of causation. For one thing, Coburn was *fired* two months after she complained about the "whiny bitches" comment. Furthermore, the Work Plan and Coburn's termination can be considered to be an outgrowth of Coburn's poor performance evaluations, which occurred less than six months after Coburn voiced her opposition to Beirne's comments.

are within a range that can properly support an inference of causation. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002). Moreover, even if temporal proximity were lacking, Coburn provided "circumstantial evidence of a pattern of antagonism following the protected conduct," *Porter*, 419 F.3d at 895 (quotation marks omitted), including her allegation that when she told Degen about Beirne's comments, he responded, "you don't, you don't talk back you say yes sir, may I have another, yes sir, may I have another."

As with her discrimination claim, Coburn concedes that Pulte satisfied its burden of providing a non-retaliatory reason for her termination by alleging that Coburn suffered the adverse employment actions due to her poor performance. However, Coburn presented sufficient evidence that Pulte's non-retaliatory reason for terminating her was a pretext for the same reasons as with her discrimination claim. Thus, the grant of summary judgment on this claim was error.

REVERSED.

11