BEA, Circuit Judge,
dissenting in part:
Efrain Reynaga appeals the district court’s grant of summary judgment in favor of defendant Roseburg Forest Products (“Roseburg”) for his hostile work environment, disparate treatment, and retaliation claims in violation of 42 U.S.C. § 2000e (“Title VII”), 42 U.S.C. § 1981, and Oregon state law. The events leading to this lawsuit occurred when Appellant Reynaga (of Mexican descent) worked as a millwright for Roseburg between 2004 and 2010, during which time he claims to have been subject to racially disparaging statements and disparate treatment because of his race by lead millwright Timothy Branaugh. I concur in the panel majority’s opinion reversing the district court’s grant of summary judgment for defendant on Reynaga’s retaliatory termination claim. However, because Roseburg took prompt and effective action to rectify the hostile work environment experienced by Reynaga and terminated Rey-naga only after he repeatedly refused to work his assigned shifts, the district court concluded properly that his hostile work environment and disparate treatment claims should fail as a matter of law.
I.
Reynaga has the burden of proving that Branaugh’s conduct was “sufficiently severe or pervasive to alter the conditions of ... [his] employment and create an abusive work environment.” Vasquez v. Cnty. *696 of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003). Furthermore, Reynaga must establish that Roseburg is liable for Branaugh’s conduct, either vicariously or based on negligence. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1119 (9th Cir. 2004).
The district court concluded that Bra-naugh’s racist statements were not sufficiently severe so as to alter the conditions of Reynaga’s employment. The court also held, alternatively, that (1) Roseburg was not vicariously liable for Branaugh’s conduct because Branaugh was not a supervisor, and that (2) Roseburg was not negligent because it promptly and effectively remedied Branaugh’s misconduct. I agree with the panel majority that Roseburg cannot be held liable for Branaugh’s conduct under a theory of vicarious liability. But even assuming that Branaugh’s misconduct was sufficiently severe so as to alter the terms of Reynaga’s employment, Reynaga has not established that Rose-burg failed promptly and effectively to remedy Branaugh’s misconduct.
Roseburg took prompt action to remedy the alleged misconduct. Reynaga’s son spoke with another Roseburg employee about Branaugh’s behavior in October 2009, which led Roseburg to conduct an investigation in which Reynaga participated. But Appellant filed a written complaint with Roseburg that specifically identified Branaugh and referred to “acts of discrimination” and a “hostile work environment” only in December 2009. Roseburg hired Vigilant within one week of receiving Rey-naga’s written complaint, and a representative from Vigilant interviewed Reynaga on December 10, 2009. Vigilant interviewed other employees as well. During the course of Vigilant’s investigation, Rose-burg altered Branaugh’s work schedule to keep Reynaga and Branaugh apart as much as possible.
Roseburg’s intervention was not only prompt, but also effective. Reynaga does not identify a single derogatory statement made by Branaugh after Vigilant commenced its investigation.[1] The fact that Roseburg scheduled Reynaga to be at the facility on the same day as Branaugh alone would not allow a reasonable juror to conclude that Roseburg’s intervention was not effective, such that Roseburg could be held liable as negligent. Roseburg’s duty was to take reasonable care in eliminating Reyna-ga’s exposure to Branaugh’s hostile, racist statements, not ensure that Branaugh and Reynaga were never working in the same facility. Thus, as far as Reynaga’s evidence shows, Branaugh’s racist statements ceased by the time that the employer acted on Reynaga’s complaint. Reynaga cannot raise a triable issue of fact as to whether his workplace was hostile following Rose-burg’s intervention. As such, Reynaga’s hostile workplace claim should fail.
II.
To establish that he suffered disparate treatment in violation of Title VII and § 1981, Reynaga “may ... [use] the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated” the defendant. Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007). Under the McDonnell Douglas framework, Reynaga must show that: “(1) [he] belongs to a protected class, (2) [he] *697 was performing according to [his] employer’s legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees with qualifications similar to [his] own were treated more favorably.” Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).
According to Roseburg, it fired Reynaga on January 18, 2010 because Reynaga walked off the job on January 9 and refused to work his scheduled shift on January 13. It is undisputed that Reynaga walked off the job on January 9 and refused to work the January 13 shift. These are legitimate, non-discriminatory reasons to terminate Reynaga. The panel majority asserts that Roseburg requiring Reynaga to work on January 13 at the same time as Branaugh and Roseburg’s decision not to discipline Branaugh immediately offered potential evidence of disparate treatment. However, as mentioned above, Reynaga did not have a right to insist that Rose-burg fire Branaugh or never schedule Bra-naugh at the same time that Reynaga was working. Branaugh’s hostile, racist statements ceased after Vigilant began investigating Branaugh in December 2009. That Roseburg did not discipline Branaugh before Vigilant completed its investigation and Reynaga walked off the job similarly cannot be construed as evidence of disparate treatment. For these reasons, Reyna-ga did not provide direct or circumstantial evidence to suggest a discriminatory motivation for termination. He also failed to offer evidence that other workers had not been terminated when they walked off the job so as to satisfy the burden shifting framework. Accordingly, no reasonable jury could find that Roseburg subjected Reynaga to racially disparate treatment when it fired him for refusing to work on January 13. The district court should thus be affirmed on this point.[2]
I respectfully dissent.

. Reynaga identified only two acts by Bra-naugh occurring after December 10, 2009: (1) on Jan. 4, 2010, Branaugh left an email in the breakroom purporting to quote a book by Lee Iacocca that said "our borders are like sieves;” and (2) on Jan. 13, 2010, Branaugh revved his automobile's engine in Reynaga’s presence. These two acts are not sufficiently severe so as to alter the terms of Reynaga’s employment. Vasquez, 349 F.3d at 642.

. I agree with the panel majority that Reyna-ga did raise a triable issue of material fact as to disparate treatment for the lock cutting incident under the McDonnell-Douglas framework.