Marigrace MICKELSEN, Plaintiff,

v.

ALBERTSON'S, INC., Defendant.

No. CIV.01–398–S–LMB.

United States District Court,
D. Idaho.

Sept. 10, 2002.

Stephen J Lord, Boise, ID, for Marigrace Mickelsen, plaintiff.

Harry S Chandler, Stoel Rives, Boise, ID, for Albertson's, Inc., defendant.

## ORDER

BOYLE, Chief United States Magistrate Judge.

Currently pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 17), Defendant's Motion to Strike (Docket No. 34), and Plaintiff's Motion to Strike (Docket No. 40).

Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

## I.

## BACKGROUND

Marigrace Mickelsen ("Plaintiff") was born on April 27, 1936. In the instant action, Plaintiff was employed by Albertson's, Inc. ("Defendant") from September of 1964 through June of 1974, and then again from May 9, 1988 through May 21, 1999, when Plaintiff was discharged by Defendant. *Complaint* ¶ IV. Plaintiff alleges that she was not reinstated to her previous position, and was instead discharged when she returned from a leave of absence for back surgery.

From approximately 1992 until 1996 or 1997, Plaintiff worked as a shipping clerk in the warehouse at Defendant's Sundries Center until she was moved to the receiving clerk responsibilities. *Deposition of Marigrace Mickelsen*, p. 16 (*Aff. of Harry S. Chandler*, Docket No. 23). In late 1997, Plaintiff experienced a non-work related injury which required surgery in January 1998. She did not return to work until March 1998. *Id.* at pp. 10–11.

In December 1998, Plaintiff had another surgery performed on her back. On April 29, 1999, she was released by her doctor to return to work with a lifting restriction of 25 pounds as well as instructions not to sit on high chairs with poor back support. *Id.* at pp. 24–26, 31. Thereafter, on or about May 5, 1999, Plaintiff met with Mary Huber–Thompson, Defendant's Sundries Center Human Resource Manager, and Tony Hartz, Defendant's Warehouse Operations Manager, and was informed that "one warehouse clerk position had been eliminated and there was no warehouse clerical job for her to return to." *Aff. of Mary Huber–Thompson* ¶ 7 (Docket No. 20).

On May 5, 1999, Plaintiff applied for the open position of Personnel Assistant, which was the "only open warehouse position then available." *Id.* However, Plaintiff was not selected for the position and, as a result, on May 21, 1999, Plaintiff's employment was terminated. *Id.* ¶ 5.

Plaintiff filed suit in the District Court of the Fourth Judicial District of the State of Idaho alleging claims under the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and violations of the Idaho Human Rights Act ("IHRA"). On August 7, 2001, that action was then removed to this Court.

## II.

## ANALYSIS

### A. *Defendant's Motion to Strike (Docket No. 34)*

Defendant moves to strike portions of Plaintiff's affidavit which are conclusory, speculative, argumentative, do not demonstrate that the affiant is competent to testify to those matters, and not based on personal knowledge.[1] Defendant argues that these type of statements do not com-

---

1. Specifically, Defendant moves to strike paragraphs 13, 15, 16, 17, 18, 21, 22, 23, 24, 25, 28, 29, 32, 34, 36, 37, 38, 39, 40, and 41.

*Defendant's Motion to Strike,* p. 2 (Docket No. 34).

ply with the requirements of Fed.R.Civ.P. 56(e) and must be stricken.

It is well settled that "only admissible evidence may be considered in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir.1988). Pursuant to Rule 56(e), affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).

█ Since Rule 56(e) is clear in requiring that supporting and opposing affidavits must be based on personal knowledge, the Ninth Circuit has recognized that an affidavit made upon information and belief does not comply with Rule 56(e). *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir.1995) (recognizing that declarations "on information and belief" are not entitled weight for summary judgment proceedings where the declarant lacks personal knowledge); *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (concluding that because an individual's declaration is "not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact regarding antitrust injury"); *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir.1978) (stating that "facts alleged on 'understanding' like those based on 'belief' or on 'information and belief,' are not sufficient to create a genuine issue of fact").

In light of the foregoing, the Court will strike paragraphs 15, 16, 18, 21, and 24 of the Affidavit of Marigrace Micklesen on the grounds that the affiant lacks personal knowledge. Further, the Court will strike those identified portions of the following paragraphs on the same grounds:

*Paragraph 13:*

The sentence "[e]ven under Albertson's notion of 'seniority,' I believe that I was considered 'senior.'"

*Paragraph 17:*

The sentence "I have reviewed Exhibit N attached to Mary Huber Thompson's affidavit and believe that it was not in effect on the date of my re-hire in 1988 or on the date of my transfer to the receiving clerk position in 1996, as Exhibit N has a date in the lower left hand corner of 7/97."

*Paragraph 23:*

The first part of the paragraph that states "[i]n addition to altering documents or creating documents with mistakes on them and signing my name to them to make me appear as if I had been inaccurate . . . ."

*Paragraph 25:*

The sentence "I confidentially complained about this behavior to Bruce Smith, who, instead of taking action to prevent Burchfield from continuing her pattern of behavior toward me, apparently told Burchfield to counsel me."

*Paragraph 32:*

The sentence "I believe that this move was the beginning point of a concerted effort to remove me from the workplace based on my age."

*Paragraph 36:*

The sentence "I believe that Albertson's did not provide all of the time sheets from all vendors of temporary help."

*Paragraph 37:*

The sentence "I believe that my combination of formal college education and experience, even though I did not obtain a college degree, is at least the equivalent of a college degree."

*Paragraph 38:*

The sentence "I believe that I could easily have learned all the Microsoft appli-

cations mentioned, but was never given the chance to, because Mary Huber–Thompson hired Tara Elayer, a younger applicant for the job."

*Paragraph 41:*

The sentence "I believe that the decision to terminate me was only made when I was able to return to work in May of 1999 and requested that I be placed in the last job for which I was selected, namely the receiving clerk position."

 Further, it is well established that Plaintiff cannot defeat a motion for summary judgment by making conclusory statements without evidentiary support. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *see also Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir.1993) (recognizing "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact"); *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983) (recognizing that the plaintiff's "mere assertions" that the defendant had a discriminatory intent were inadequate, without substantial factual evidence, to raise an issue to preclude summary judgment).

With respect to paragraphs 22, 28, 34, 39, and 40, the Court concludes these paragraphs are conclusory and should be stricken. Further, the Court concludes that the second sentence of paragraph 29 which states "Albertson's was aware that I needed this accommodation to allow me to provide care for my husband" is conclusory and speculative.

Accordingly, Defendant's Motion to Strike is granted as provided above.

**2.** *See also* Rule 56(e), which provides in part:

**B. *Plaintiff's Motion to Strike (Docket No. 40)***

 On August 28, 2002, during the hearing of all pending motions, Plaintiff made an oral motion to strike inadmissable portions of the affidavits submitted in support of Defendant's summary judgment motion. (Minute Entry, Docket No. 40). To the extent that the Court relied on these affidavits, the Court concludes that the portions of the affidavits referenced in this decision are admissible as they are based on personal knowledge and otherwise comply with Rule 56. Accordingly, Plaintiff's oral motion to strike is denied.

**C. *Standard for Summary Judgment***

Motions for summary judgment are governed by Fed.R.Civ.P. 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.[2]

When a motion for summary judgment is made and supported as provided in this

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Ninth Circuit cases are in accord. *British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir.1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party:

(1) must make a showing sufficient to establish a genuine issue of fact with

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib.*, 882 F.2d at 374 (citation omitted). Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983) (citing *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis added).

### D. *Defendant's Motion for Summary Judgment (Docket No. 17)*

Pursuant to the IHRA, "[i]t shall be a prohibited act to discriminate against a person ... on the basis of age or disability ...." I.C. § 67–5909. As recognized by the Ninth Circuit, "[t]he Idaho Supreme Court has held the analysis under Title VII applies to claims under IHRA." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 n. 4 (9th Cir.1994) (citing *Hoppe v. McDonald*, 103 Idaho 33, 644 P.2d 355, 358 (1982)). Further, with respect to Plaintiff's ADA claim, the Supreme Court of Idaho has recognized that an analysis under federal law is applicable to a claim under the IHRA. *Stansbury v. Blue Cross of Idaho Health Serv., Inc.*, 128 Idaho 682, 685, 918 P.2d 266 (1996).

In light of the foregoing, the Court concludes that the Court's decision resolving Plaintiff's ADEA and ADA claims will also resolve her IHRA claim. *See Wallis*, 26 F.3d at 889 n. 4. Accordingly, the Court will first address the burden of proof required for Plaintiff's claims under the ADEA and the ADA.

### 1. *ADEA*

When Plaintiff was terminated, she was 63 years old. Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In the Ninth Circuit, the basic allocation and burden of proof for an ADEA claim involves three steps:

[A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Wallis*, 26 F.3d at 889 (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir.1985)).

The court in *Wallis* recognized that "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987)). Further, "[t]he *prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or by more direct evidence of discriminatory intent." *Id.* (citing *Lowe*, 775 F.2d at 1009).[3]

**3.** The factors set forth by the Supreme Court of the United States in *McDonnell Douglas* are:

1. that the plaintiff belongs to a class protected by Title VII;

2. that the plaintiff applied and was qualified for a job for which the employer was seeking applicants;

3. that, despite being qualified, the plaintiff was rejected; and

■ Generally, to establish a *prima facie* case of an ADEA violation, Plaintiff must show that she was:

(1) A member of a protected class [age 40–70];

(2) Performing her job in a satisfactory manner;

(3) Discharged; and

(4) Replaced by a substantially younger employee with equal or inferior qualifications.[4]

*Rose*, 902 F.2d at 1420 n. 1.

[5] In the instant action, Defendant does not argue that Plaintiff has not established a *prima facie* case for age discrimination. Accordingly, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its employment decision. *See Lowe*, 775 F.2d at 1005.

According to the record, in 1996 or 1997, Plaintiff requested and was moved to the receiving clerk position because she did not want to "work all the overtime that was on the shipping desk." *Mickelsen Depo.*, p. 16. In January 1998, Plaintiff had back surgery and did not return to work until March 16, 1998. *Id.* at p. 11. On June 9, 1998, Plaintiff requested and received approval for an intermittent leave of absence to care for her husband, under the Family and Medical Leave Act ("FMLA").

In the fall of 1998, Tony Hartz made the decision that the three warehouse clerks performing shipping and receiving functions should all be "cross-trained so that

they could substitute for one another," and so there would be "better coverage of the jobs." *Hartz Aff.* ¶ 3 (Docket No. 22). Hartz further averred that in October 1998, he told Plaintiff that as a result of the cross-training, Plaintiff would go from "receiving to shipping clerical responsibilities." *Id.* ¶ 4.

From October 1998 until December 1998, Plaintiff worked as a shipping clerk. *Mickelsen Depo.*, p. 17. Subsequently, Plaintiff went on approved FMLA leave to have back surgery. On February 4, 1999, Plaintiff's twelve-week FMLA allowance expired. At this time, Plaintiff continued on a general or personal leave of absence, which did not guarantee a return to her prior position. *Huber–Thompson Aff.* ¶ 4, Ex. P. Pursuant to Defendant's "Leave of Absence Company Policy," unlike approved FMLA leave, "[e]mployees returning to work following an approved Leave of Absence will be re-employed in the closest comparable position ... but only if such work is available." *Id.* Ex. P.

Following Plaintiff's exhaustion of her FMLA approved leave period, Mary HuberThompson testified in her affidavit that the position held by Plaintiff before she left work on leave was posted as being available on February 22, 1999. According to Huber–Thompson's affidavit, this was after Plaintiff's FMLA leave expired and after Plaintiff "informed me that she would not be able to return to work." *Id.* ¶ 4. However, HuberThompson averred this posting was withdrawn on March 3, 1999

4. that, after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of comparable qualifications.
*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

4. With respect to the fourth element, the court in *Wallis* recognized that proof of this element is not always required. The court in *Wallis*, 26 F.3d at 891, stated:

Where the discharge results from a reduction in work force, the plaintiff may show "through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." Such an inference can be established by showing the employer had a "continuing need for his skills and services in that his various duties were still being performed." (citations omitted).

because "we expected to eliminate the position as the result of an anticipated decline in the workload following the Albertson's merger with American Stores." *Id.* The record demonstrates that Bruce Smith, General Manager for the Sundries Center, approved the withdrawal of the posting of the job vacancy, based on Hartz's representation that the warehouse clerks thought they could carry the necessary workload without hiring a replacement for Plaintiff. *Aff. of Bruce Smith,* ¶ 5 (Docket No. 21).

Thereafter, Plaintiff applied for the Personnel Assistant position on May 5, 1999. However, Huber–Thompson averred that Tara Elayer was selected for the position because she was "the best qualified of the 50 applicants." *Huber–Thompson Aff.* ¶ 4. Huber–Thompson averred that Elayer was a "stronger candidate than Mickelsen because Ms. Elayer had a college degree." *Id.* Subsequently, Plaintiff's employment was terminated in May 1999 "as there was no suitable job for her to return to when she was finally released by her physician to return to work." *Smith Aff.* ¶ 6.

After carefully reviewing the record, the Court concludes that Defendant has adequately articulated a legitimate nondiscriminatory reason for terminating Plaintiff. According to the record, in July 1998, Smith became aware of the Albertson's acquisition merger of American Stores Corporation. *Smith Aff.* ¶ 4. Further, by January 1999, Smith averred that "I was anticipating that the various government agencies whose approval for the merger was required would compel Albertson's to divest some number of stores." *Id.* As a result, Smith averred that the workload of the Sundries Center would be reduced and that he "welcomed any opportunity to reduce the number of positions at the Center." *Id.* ¶¶ 4–5. Therefore, Smith averred that he approved pulling the posting for Plaintiff's job. *Id.* ¶ 5. Huber–

Thompson averred that even if Plaintiff would have been on the job when the decision was made to reduce one clerical position, Plaintiff still would have been laid off first "as she was the weakest performer." *Huber–Thompson Aff.* ¶ 9.

Further, the Court concludes that Defendant had a legitimate nondiscriminatory basis to terminate Plaintiff because the record demonstrates that employees on a general or personal leave of absence are not guaranteed a job when they return if there is no comparable position available. According to Huber–Thompson, a comparable position "would not be one that is a promotion for the individual in question." *Huber–Thompson Aff.* ¶ 5. Huber–Thompson averred that placing Plaintiff in the Personnel Assistant job would have been a promotion. *Id.* ¶ 6.

Since the Court is satisfied that Defendant has demonstrated a legitimate nondiscriminatory basis to terminate Plaintiff, the burden shifts back to Plaintiff to demonstrate that Defendant's reason for the adverse employment decision is pretext for another motive which is discriminatory. *Lowe,* 775 F.2d at 1007.

██ The Ninth Circuit has recognized that a plaintiff can demonstrate pretext by either direct or circumstantial evidence. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998). When a plaintiff offers direct evidence of a discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* However, where a plaintiff must rely on circumstantial evidence to defeat summary judgment, the plaintiff is required to produce "specific, substantial evidence of pretext." *Id.*

In the instant action, Plaintiff has not submitted direct evidence to support her claim of Defendant's discriminatory motive. Thus, Plaintiff relies on *Reeves v.*

*Sanderson Plumbing Products, Incorporated,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) in opposition to Defendant's Motion for Summary Judgment for the proposition that circumstantial evidence may be sufficient to preclude granting of summary judgment. In *Reeves,* the Supreme Court of the United States analyzed a situation where the defendant contended that it had fired the plaintiff due to his failure to maintain accurate attendance records. In response, the plaintiff argued that the defendant's explanation was pretext for age discrimination. In its analysis, the Court in *Reeves* stated that the plaintiff made a "substantial showing that [the defendant's] explanation was false." *Id.* at 144. Therefore, the Court concluded that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.

Although the Court in *Reeves* concluded that plaintiff had submitted sufficient evidence to sustain the jury's finding of liability, the Court stated:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to a judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff

created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.[5]

*Id.* (emphasis in original).

Contrary to *Reeves,* wherein the plaintiff made a "substantial showing" that the defendant's actions were pretextual, the Court concludes in this instant action that Plaintiff has not made this type of evidentiary showing to preclude granting of summary judgment. For example, although Plaintiff argues that she was "senior" to the other two warehouse clerks, the record does not support that contention. According to the record, Huber–Thompson averred that even if Plaintiff would not have been the "weakest performer," and if all three warehouse clerks "had been equal in performance, Mickelsen would have been laid off first based upon her having the most recent date of hire and the least number of years of continuous service." *Id.* ¶ 9.

Huber–Thompson averred that Plaintiff's date of hire was May 9, 1988, making the other two warehouse clerks, Teddi Hoffman, and Gloria Richardson, senior to her. *Huber–Thompson Aff.* ¶ 8. Smith averred that although Plaintiff did receive a service award in 1988, reflecting twenty (20) total years with Defendant and its predecessor, he averred that "[o]ur service awards take into consideration total years of service, which is different from date of hire for purposes such as vacation accruals, sick leave accruals, and considerations in the event of a reduction in work force. For those purposes, the most recent date

---

5. The Court in *Reeves* recognized that the "standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Id.* at 150. Thus, although the Court in *Reeves* addressed a Rule 50 motion, this Court concludes that the standard is applicable to the instant summary judgment proceedings.

of hire is used as the seniority date." *Smith Aff.* ¶ 7.

According to Defendant's Rehire and Reinstatement Policy, when a former employee is rehired after a period of 30 days or more of not being employed by Defendant, a new hire date is established. *Huber–Thompson Aff.* Ex. N. The Court notes that Plaintiff's payroll history, performance appraisals, and vacation and sick pay records all clearly confirm her date of hire was May 9, 1988, *Second Huber–Thompson Aff.* Exs. R, U, W. In fact, the record is clear that Plaintiff signed performance appraisals, all of which made it clear she knew, or at least was put on notice, that her hire date was May 9, 1988. *Id.* Ex. U. In the Court's view, it is difficult for Plaintiff to argue that she did not know her hire date was considered by Defendant to be May 9, 1988.

Further, the Court notes that Defendant utilized temporary employees "who filled in for shipping/receiving clerks in the warehouse during 1999." *Id.* ¶ 4. However, the Court is of the opinion that because temporary employees were used does not establish that a warehouse job had in reality not been eliminated. Rather, according to the record, it is undisputed that temporary employees were used when either Hoffman or Richardson were on vacation or sick leave. *Id.* Ex. Z. Plaintiff has not submitted any evidence to the contrary on this factual issue.

Further, the Court concludes that the fact Defendant hired Tara Elayer, a younger applicant, instead of Plaintiff, for the Personnel Assistant job is insufficient of itself to establish pretext. In this regard, the Fifth Circuit Court of Appeals has stated that in order to establish pretext in this manner, Plaintiff must establish that her qualifications "leap from the record and cry out to all who would listen that [she] was vastly—or even clearly—more qualified for the subject job." *Price v.*

*Fed. Express Corp.,* 283 F.3d 715 (5th Cir.2002). The Fifth Circuit has also described in most colorful language that the disparities in qualifications must be "so apparent as to virtually jump off the page and slap you in the face." *Deines v. Texas Dep't of Protective & Regulatory Servs.,* 164 F.3d 277, 279 (5th Cir.1999); *see also Cofield v. Goldkist Inc.,* 267 F.3d 1264 (11th Cir.2001).

In the instant action, Huber–Thompson averred that Elayer was selected instead of Plaintiff because she was a "stronger candidate" than Plaintiff. *Huber–Thompson Aff.* ¶ 4. In opposition, Plaintiff averred that Defendant "frequently hires underqualified individuals and provides them a chance to learn on the job." *Mickelsen Aff.* ¶ 38. However, it is clear that the role of the Court in this judicial setting is not to act as a "super-personnel department" that "second guesses [an] employer's business judgments." *Simms v. Oklahoma Dep't of Mental Health and Substances Abuse Servs.,* 165 F.3d 1321, 1330 (10th Cir.1999); *see also Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000) (stating that to survive summary judgment, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer" as federal courts do not sit as "super-personnel departments that reexamines an entity's business decisions"). The Court agrees.

In light of all the foregoing, this Court concludes in this instant action that Plaintiff's personal opinions about her qualifications do not give rise to a material factual dispute. *Simms,* 165 F.3d at 1329. Thus, the Court concludes that Plaintiff has failed to demonstrate pretext by Defendant's hiring of Elayer for the Personnel Assistant position.

Finally, the Court has considered Plaintiff's allegations that her discharge was also based on her filing a grievance against Cathy Burchfield for harassment. *Complaint* ¶ IX. Plaintiff alleges that this harassing behavior began "[s]hortly after I rejoined Albertson's in 1988." *Mickelsen Aff.* ¶ 20. Plaintiff avers that in 1992, she was moved from Burchfield's supervision in accounts payable to the warehouse shipping clerk job "to insure she would no longer have any supervision over me." *Id.* ¶ 27.

Although Plaintiff argues that the grievance filed against Burchfield was a basis that Defendant used to terminate her, there is no evidence in the record to establish a connection between the grievance filed many years earlier and Defendant's subsequent decision to terminate Plaintiff in 1999. Thus, the Court concludes that the Burchfield incident is insufficient evidence to show a discriminatory motive in terminating Plaintiff.

In sum, after carefully considering the record, the Court finds, and thus concludes, that beyond the fact that Plaintiff was 63 years old at the time of her termination and that she was the oldest of the three warehouse clerks, Plaintiff has not demonstrated the "specific, substantial evidence of pretext" required to defeat summary judgment. *Godwin,* 150 F.3d at 1221. Rather, the Court concludes there is "abundant and uncontroverted independent evidence" of Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Accordingly, Plaintiff's claim of age discrimination under the ADEA and the IHRA is dismissed and Defendant's Motion for Summary Judgment is granted in this respect.

### 2. *ADA*

According to the ADA, a disability is, "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

■ According to the Supreme Court of the United States in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), in order for Plaintiff to establish a *prima facie* case for discrimination based on disability, she must first show that she has a physical or mental impairment that substantially limits a major life activity. 122 S.Ct. at 690.

In determining whether the impairment substantially limits a major life activity, the Supreme Court in *Toyota Motor* considered "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Id.* (quoting 29 C.F.R. §§ 1630.2(j)(2)(i-iii) (2001)). The Court in *Toyota Motor* determined that a substantial impairment "clearly precludes impairments that interfere in only a *minor* way with the performance of manual tasks from qualifying as disabilities." *Id.* at 691 (emphasis added).

Further, the Court in *Toyota Motor* described "major life activities" as "activities that are of central importance to daily life," which include "such basic abilities as walking, seeing, and hearing." The Court also recognized that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* (citing 42 U.S.C. § 12101).

■ When the major life activity under consideration is that of working, "the statutory phrase 'substantially limits' requires... that plaintiffs allege that they are unable to work in a broad class of

jobs." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Although the Court in *Sutton* declined to address the question whether working could even be considered a major life activity, it went on to state *"even assuming that working is a major life activity,* a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor,* 122 S.Ct. at 693 (quoting *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139) (emphasis added).

In the instant action, the record demonstrates that Plaintiff was released to work on approximately April 29, 1999 with a lifting restriction of 25 pounds. (*Mickelsen Depo.,* pp. 24–26, 31). However, Plaintiff has neither alleged facts nor produced evidence that demonstrates she is unable to work in a broad range of jobs or even her specific job with Defendant, as is required for finding her disabled from the major life activity of "working." Rather, the evidence demonstrates that Plaintiff did temporary work with different employers. *Mickelsen Depo.,* pp. 29–30. In fact, Plaintiff testified that at the time of her February 2002 deposition, she was involved in volunteer work at Greenleaf City Hall. *Id.* at p. 31.

The Supreme Court in *Toyota Motor* recognized that upon a proper showing, a plaintiff's impaired ability to perform manual tasks may qualify as a limitation of a major life activity. 122 S.Ct. at 691. The Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Id.*

In *Toyota Motor,* the plaintiff had alleged and argued that "her physical impairments substantially limited her in (1) manual tasks; (2) housework; (3) gardening; (4) playing with her children; (5) lifting; and (6) working, all of which, she argued, constituted major life activities," *id.* at 687, but that "she could still brush her teeth, wash her face, bathe, tend her flower garden, fix breakfast, do laundry, and pick up around the house." *Id.* at 694. The Court concluded that these impairments "did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual-task disability as a matter of law." *Id.*

In the instant action, Plaintiff testified that "[t]he only physical disability I believe I have is not being able to do some of the recreation that I did like running, bicycle riding." *Mickelsen Depo.,* pp. 43–44. Further, Plaintiff testified that she does a variety of activities including housekeeping, cooking, laundry, mowing her lawn, gardening, some rototilling, raking leaves, playing with great grandchildren, washing windows, shopping, driving (including four hour drives to Jackpot, Nevada), painting woodwork, computer work, taking out the garbage, and walking daily for exercise. *Id.* at pp. 32–37.

In the Court's view, Plaintiff's alleged impairments fall far below the impairments experienced by the plaintiff in *Toyota Motor,* where the Supreme Court found the plaintiff was not disabled. Based on the instant record, beyond the fact that Plaintiff has undergone two back surgeries and that her doctor placed a 25 pound lifting restriction and other minor restrictions upon her return to work, Plaintiff does not make any allegations and cites to no evidence that she was severely restricted from doing any activities of central importance in most people's lives as described by the Supreme Court in the *Toyota Motor* case.

The Court notes that in Plaintiff's opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that Huber–Thompson "regarded" her as having a disability (citing to Huber–Thompson's Affidavit at p. 5, ¶ 7). However, in that paragraph, Huber–Thompson avers only that Plaintiff "showed her doctor's release, and stated that she would not perform one of the essential functions of the shipping position, i.e., reaching across a counter for necessary shipping paperwork." *Huber–Thompson Aff.* ¶ 7. In the Court's view, this evidence does not establish that Huber–Thompson "regarded" Plaintiff as having a disability, nor is there evidence in the record to support such a claim.

In light of all the foregoing discussion, this Court concludes that Plaintiff has failed to establish a *prima facie* case of discrimination based on disability. Accordingly, the Court concludes that Plaintiff's disability discrimination claim under the ADA and the IHRA is dismissed, and Defendant's Motion for Summary Judgment is granted in this respect.

### III.

### ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant's Motion to Strike (Docket No. 34) is GRANTED.

2. Plaintiff's Motion to Strike (Docket No. 40) is DENIED.

3. Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED, thereby dismissing Plaintiff's complaint in its entirety.

4. The October 21, 2002 pre-conference and the November 4, 2002 jury trial are VACATED.