**Nina FU, Plaintiff,**

v.

**WALKER PARKING CONSULTANTS, Defendant.**

**No. C 09–05056 JW.**

United States District Court,
N.D. California,
San Francisco Division.

July 12, 2011.

Daniel L. Feder, The Law Offices of Daniel L. Feder, San Francisco, CA, for Plaintiff.

Ashley E. Choren, Eden Edwards Anderson, Michael J. Burns, Esq., Seyfarth Shaw LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES WARE, Chief Judge.

### I. INTRODUCTION

Nina Fu ("Plaintiff") brings this action in diversity against Walker Parking Consultants ("Defendant") alleging, *inter alia*, violations of California's Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12940 *et seq.*, and California's Pregnancy Disability Leave Law ("PDLL"), California Government Code § 12945. Plaintiff alleges that Defendant unlawfully discriminated against her on the basis of her pregnancy and unlawfully refused to reinstate her following her pregnancy disability leave, in violation of California law.

Presently before the Court is Defendant's Motion for Summary Judgment.[1] The Court conducted a hearing on July 11, 2011. Based on the papers submitted to

date and oral argument, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment.

### II. BACKGROUND

#### A. Undisputed Facts

Plaintiff is a resident of Union City, California.[2] Defendant is a Michigan corporation licensed to do business in the state of California. (*Id.* ¶ 2.) In December of 2007, Plaintiff began working in Defendant's San Francisco office in the position of Design Engineer III.[3] In March of 2008, Defendant hired Sanaz Ghahani ("Ghahani") in its San Francisco office in the position of Design Engineer II. (*Id.* at 7–8; *Id.* at 3.)

On January 2, 2009 Plaintiff began her maternity leave, and Plaintiff gave birth on January 8, 2009. (Motion at 12; Opp'n at 7.) Prior to going on maternity leave, Plaintiff and Defendant agreed that she would return to work on May 18, 2009. (*Id.* at 10; *Id.*) On March 17, 2009, an employee of Defendant called Plaintiff to inform her that she was being laid off. (*Id.* at 14; *Id.* at 8.) In September of 2009, Defendant laid off Ghahani as well. (*Id.* at 15; *Id.* at 16.)

#### B. Procedural Background

On September 24, 2009, Plaintiff filed her Complaint in the Superior Court of the County of San Francisco.[4] Plaintiff's Complaint alleges nine Causes of Action as follows: (1) Discharge and Discrimination

1. (Defendant's Notice of Motion and Motion for Summary Judgment or Summary Adjudication; Memorandum of Points and Authorities in Support, hereafter, "Motion," Docket Item No. 26.)

2. (*See* Notice of Removal of Civil Action to the United States District Court Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereafter, "Removal Notice," Ex. A, Plaintiff's First

Complaint for Damages ¶ 1, Docket Item No. 1.)

3. (Motion at 4–5; Plaintiff Fu's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment or Summary Adjudication at 2–3, hereafter, "Opp'n," Docket Item No. 31.)

4. (*See* Removal Notice ¶ 2.)

in Compensation and the Terms, Conditions and Privileges of Employment Because of Pregnancy, Cal. Gov.Code §§ 12940(a) & 12926(p); (2) Unlawful Denial of Reasonable Accommodation for Conditions Related to Pregnancy, Cal. Gov.Code §§ 12945(a) & 12945(b); (3) Unlawful Retaliation, Cal. Gov.Code § 12940(h); (4) Failure to Take All Reasonable Steps Necessary to Prevent Discrimination from Occurring, Cal. Gov.Code § 12940(k); (5) Unlawful Denial of Leave Pursuant to the California Family Rights Act, Cal. Gov.Code § 12945.2; (6) Unlawful Denial of Leave Pursuant to the California Pregnancy Disability Leave Law, Cal. Gov.Code § 12945; (7) Wrongful Termination in Violation of Public Policy; (8) Intentional Infliction of Emotional Distress; (9) Failure to Engage in the Interactive Process, Cal. Gov.Code §§ 12940 *et seq.*[5] Plaintiff's Complaint also prays for punitive damages. (*Id.*, Prayer for Relief.) On October 23, 2009, Defendant removed the action to this Court on the grounds that diversity exists between the parties and the amount in controversy exceeds $75,000. (Removal Notice ¶¶ 4–11.)

Presently before the Court is Defendant's Motion for Summary Judgment.

### III.  STANDARDS

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court draws all reasonable inferences in favor of the nonmoving party, including questions of credibility and of the weight that particular evidence is accorded. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such

---

**5.** In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that she "does not object to summary adjudication" of her Second, Fifth and Ninth Causes of Action. (*See* Opp'n at 16, 18, 21.) Accord-

ingly, only Plaintiff's First, Third, Fourth, Sixth, Seventh and Eighth Causes of Action, as well as her prayer for punitive damages, are currently before the Court.

that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987). In such a case, summary judgment is inappropriate. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. DISCUSSION

Defendant moves for summary judgment as to all of Plaintiff's claims on the grounds that: (1) Plaintiff's cause of action for discrimination under the FEHA fails because she has no evidence of discriminatory intent or of pretext; (2) Plaintiff's cause of action for retaliation in violation of the FEHA fails because she has no evidence of pretext; (3) Plaintiff's cause of action for failure to prevent discrimination fails because she was not discriminated against; (4) Plaintiff's cause of action for failure to provide leave in violation of the PDLL fails because she was not disabled when she was laid off; (5) Plaintiff's cause of action for wrongful termination in violation of public policy fails because the claims on which it is predicated lack merit; (6) Plaintiff's cause of action for intentional infliction of emotional distress fails because the claims on which it is predicated lack merit; and (7) Plaintiff's claim for punitive damages fails because she has no evidence of malice, oppression or fraud. (Motion at 16–25.)

Plaintiff responds that: (1) her cause of action for discrimination survives, because she meets her prima facie burden and can show pretext; (2) her cause of action for unlawful retaliation survives for the same reasons that her first cause of action, for discrimination, survives; (3) her cause of action for failure to prevent discrimination

survives for the same reasons that her first cause of action, for discrimination, survives; (4) her cause of action for failure to provide leave in violation of the PDLL survives because Defendant cannot prove by a preponderance of the evidence that the decision to lay her off was unrelated to her pregnancy disability leave; (5) her cause of action for wrongful termination in violation of public policy survives, because her previous FEHA claims survive; (6) her cause of action for intentional infliction of emotional distress survives, because her previous FEHA claims survive; and (7) her claim for punitive damages survives, because she has "ample evidence" that Defendant's actions were "malicious." (Opp'n at 12–22.) The Court considers each ground in turn.

### A. Plaintiff's Claims for Discrimination Under the FEHA

Defendant contends that Plaintiff's claim that she was unlawfully discriminated against under the FEHA fails, on the grounds that she lacks direct evidence of discriminatory animus and cannot establish that the reasons provided by Defendant for her layoff are pretextual. (Motion at 16–22.) Plaintiff responds that she has both direct evidence of Defendant's discriminatory animus, and also evidence showing that the reasons provided by Defendant for her layoff are pretextual. (Opp'n at 12–18.)

#### 1. Plaintiff's Direct Evidence

Plaintiff contends that she has direct evidence of Defendant's discriminatory animus, in the form of statements from employees of Defendant which show that they were "preoccupied with Plaintiff's protected status as a new mother" at the time they were discussing laying her off. (Opp'n at 12–13.) Defendant responds that Plaintiff has no direct evidence of discriminatory animus, because: (1) the

statements in question merely address the timing of Plaintiff's layoff rather than its reason; and (2) the statements actually show that Plaintiff was treated more favorably than other employees, in that her layoff date was deferred.[6]

■ "The prohibition of sex discrimination in [the] FEHA encompasses ... discrimination based on pregnancy." *Scott v. WinCo Foods, Inc.*, No. 2:09–cv–01238–MCE, 2011 WL 846190, at *3 (E.D.Cal. Mar. 8, 2011) (citing Cal. Gov.Code § 12926(p)). When a plaintiff offers direct evidence of an employer's discriminatory motive, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998).[7] "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Id.* at 1221 (citation omitted).

■ Here, Plaintiff offers the following as direct evidence of Defendant's discriminatory animus: (1) one of Defendant's employees stated that the "timing [of Plaintiff's layoff] is different from [that of others who were being laid off at the same time] due to her upcoming maternity leave";[8] and (2) another of Defendant's employees stated that Defendant "planned on laying [Plaintiff] off shortly after she returned from her maternity leave," but she was "having second thoughts" because employees "will only see a new mommy being laid off while on leave," and stated that "the longer we postpone an action like this, the more likely something crops up in the meantime to make things more difficult for us."[9] (Opp'n at 12–13.)

■ Upon review, the Court finds that Plaintiff offers no direct evidence of Defendant's discriminatory animus. The statements offered by Plaintiff do not indicate that discriminatory animus was responsible for Defendant's decision to lay Plaintiff off; rather, they merely refer to the *timing* of the layoff. To conclude that these statements constitute evidence that discriminatory animus was behind Defendant's decision to lay Plaintiff off would require an inference from the proposition that Plaintiff's maternity leave played a role in the timing of her layoff to the proposition that Plaintiff's status as a pregnant woman motivated Defendant's decision to lay her off. However, "direct evidence" of discriminatory motive is evidence which proves the fact of that discriminatory motive *"without* inference or presumption." *Godwin*, 150 F.3d at 1221 (emphasis added).

### 2. Plaintiff's Evidence of Pretext

Defendant contends that, under a burden-shifting analysis, Plaintiff is unable to show that Defendant's proffered reasons for laying her off are pretextual. (Motion at 18–22.) Plaintiff responds that she has "a plethora of facts" showing that Defendant's proffered reasons for laying her off are pretextual. (Opp'n at 13–18.)

---

6. (Reply Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment or Summary Adjudication at 5–6, hereafter, "Reply," Docket Item No. 34.)

7. Because "California law under the FEHA mirrors federal law under Title VII," courts look to federal cases for guidance in analyzing claims made under the FEHA. *Godwin*, 150 F.3d at 1219.

8. (Opp'n at 12 (quoting Declaration of Eden Anderson in Support of Defendant's Motion for Summary Judgment or Summary Adjudication, hereafter, "Anderson Decl.," Ex. B, Deposition of Sanjay Pandya, hereafter, "Pandya Depo.," 209:8–16).)

9. (Opp'n at 12–13 (quoting Pandya Depo., 212:12–215:18, 232:11–233:21).)

In evaluating circumstantial evidence of discrimination, courts use the burden-shifting analysis set forth by the Supreme Court. *See Rudwall v. Blackrock, Inc.*, No. C–09–5176 TEH, 2011 WL 767965, at *5 (N.D.Cal. Feb. 28, 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that analysis, a plaintiff must first make out a prima facie case by showing that: (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." *See id.* (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (2000)). The plaintiff's prima facie burden "is not onerous." *Id.* "Once a plaintiff has established a prima facie case, the burden shifts to the employer to produce some evidence that it had legitimate, nondiscriminatory reasons for the employment decision." *Jackson v. Simon Property Group, Inc.*, No. C–10–2521 JCS, 795 F.Supp.2d 949, 959, 2011 WL 2446299, at *9 (N.D.Cal. June 17, 2011) (citation omitted). In this context, "legitimate" reasons proffered by an employer are "reasons that are *facially unrelated to prohibited bias,* and which, if true, would thus preclude a finding of *discrimination*." *Guz*, 24 Cal.4th at 358, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (emphasis in original). If the reasons proffered by an employer are nondiscriminatory, they "need not necessarily have been wise or correct." *Id.* Once an employer produces such evidence, a plaintiff "can survive summary judgment only by providing 'significant, substantial evidence of pretext.'" *Jackson*,

795 F.Supp.2d at 959, 2011 WL 2446299, at *9 (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983)).

Here, Defendant concedes that Plaintiff can establish the first three elements of a prima facie case. (Motion at 16.) Thus, the Court only considers the fourth element, namely, whether Plaintiff can show that "some other circumstance suggests discriminatory motive." *See Rudwall*, 2011 WL 767965, at *5.

To make out her prima facie case that she was discriminated against because she was pregnant, Plaintiff offers evidence showing: (1) that she was the only pregnant employee Defendant employed in San Francisco during the relevant time period; and (2) that Defendant chose to lay off Plaintiff rather than Ghahani (who was not pregnant), even though Plaintiff was senior to Ghahani.[10] Because a plaintiff's prima facie burden "is not onerous," this suffices to make out a prima facie case. *See Rudwall*, 2011 WL 767965, at *5.

Once Plaintiff has established her prima facie case, the burden shifts to Defendant "to produce some evidence that it had legitimate, nondiscriminatory reasons for the employment decision." *See Jackson*, 795 F.Supp.2d at 959, 2011 WL 2446299, at *9. Here, Defendant offers the following evidence that it had legitimate, nondiscriminatory reasons for its decision to lay off Plaintiff:

Starting in 2007, Defendant became interested in implementing a software known as "Revit" in all of its offices.[11] This software creates a realistic, three-dimensional view of a structure, enabling design engineers who use it to work more efficiently. (*Id.*) Defendant's goal

10. (*See* Opp'n at 14 (citing Declaration of Oleg Albert in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication, hereafter, "Albert Decl.," Ex. G,

Defendant's Responses to Plaintiff's Interrogatories at 4, Docket Item No. 33).)

11. (Pandya Depo. at 75:20–77:15, 80:25–82:20.)

was to make all of its offices proficient in the use of Revit within three years. (*Id.*) One of the reasons why Defendant hired Ghahani was for her experience with Revit, which she had been trained to use during graduate school.[12] Because of her experience with Revit, Ghahani provided training in the software to other employees of Defendant and participated in committee meetings about how Defendant could implement Revit.[13] During 2008, as the economy worsened, demand for Defendant's services declined, leading Defendant to implement such cost-cutting measures as layoffs.[14] Between October 2008 and July 2010, Defendant underwent eleven rounds of layoffs, in which its staff was reduced by a total of 40%.[15] During the third round of layoffs, in February of 2009, Defendant decided to lay off either Plaintiff or Ghahani, as there was insufficient work in the San Francisco office to keep both of the women busy.[16] Defendant chose to lay off Plaintiff rather than Ghahani at that time, because of Ghahani's experience with Revit.[17] During the fifth round of layoffs, in September of 2009, Defendant also laid off Ghahani.[18] No one has been hired to replace either Plaintiff or Ghahani.[19]

Based on this evidence, the Court finds that Defendant satisfies its burden to produce evidence of legitimate, nondiscriminatory reasons for its decision to lay off Plaintiff. Those reasons consist of: (1) the impact of the economic downturn on Defendant; and (2) Defendant's belief that it should retain Ghahani rather than Plaintiff because Ghahani was more skilled in the use of Revit.

Because Defendant has produced evidence that it had legitimate, nondiscriminatory reasons for laying off Plaintiff, the burden shifts back to Plaintiff to provide "significant, substantial evidence of pretext." *Steckl*, 703 F.2d at 393. Plaintiff "can survive summary judgment only by providing" such significant, substantial evidence. *Jackson*, 795 F.Supp.2d at 959, 2011 WL 2446299, at *9. Here, Plaintiff concedes that Defendant experienced "an impact from the recent economic troubles." (Opp'n at 15.) Thus, Plaintiff's contention that Defendant's explanation is pretextual centers on Defendant's claim that it decided to lay off Plaintiff rather than Ghahani because Ghahani was more skilled in the use of Revit.[20] Here, Plaintiff offers the following evidence that Defendant's proffered reasons are pretextual:

12. (Anderson Decl., Ex. D, Deposition of Sanaz Ghahani at 34:10–35:18, 36:2–9, 46:4–21.)

13. (*Id.* at 77:23–78:24; Anderson Decl., Ex. A, Deposition of Nina Fu, hereafter, "Fu Depo.," 287:10–13.)

14. (Pandya Depo. at 122:9–19, 129:17–132:1, 133:16–134:24.)

15. (Declaration of Rise Landeros in Support of Defendant's Motion for Summary Judgment or Summary Adjudication ¶¶ 6, 15–16, hereafter, "Landeros Decl.," Docket Item No. 26–1.)

16. (*Id.* at ¶¶ 10–11; Pandya Depo. at 205:16–206:1, 218:15–219:7, 245:20–248:20.)

17. (Pandya Depo. at 203:15–204:15, 218:15–220:8.)

18. (Pandya Depo. at 250:9–13; Landeros Decl. ¶ 14.)

19. (Anderson Decl., Ex. C, Deposition of Kenneth Napior, hereafter, "Napior Depo.," 95:5–15.)

20. (*See, e.g.,* Opp'n at 15 (contending that the "crux of Defendant's argument [for why it had legitimate, nondiscriminatory reasons for laying off Plaintiff] is that Ghahani's knowledge of Revit was superior to Plaintiff [sic] and that [Ghahani] played an 'instrumental' role in implementing" Revit for Defendant).)

Revit does not appear in the job descriptions for either a Design Engineer II (the position Ghahani held) or Design Engineer III (the position Plaintiff held).[21] Further, Ghahani's job title remained the same during her employment with Defendant.[22] Additionally, Defendant's use of Revit "was and remains sparse," which "contradict[s]" Defendant's claims about the "importance" of Revit to its operations.[23] Finally, Ghahani was herself terminated in September of 2009.[24]

Upon review, the Court finds that this does not amount to "significant, substantive evidence" that Defendant's proffered reasons for laying off Plaintiff rather than Ghahani are pretextual. Viewed in the light most favorable to the non-moving party, Plaintiff's evidence goes only to the extent to which Defendant was using Revit.[25] In regard to that evidence, first, the Court finds that Plaintiff misstates the evidence when she contends that it shows that "Revit was fairly unimportant to [Defendant's] operations" up to the point at which Plaintiff was laid off.[26] In fact, the evidence cited by Plaintiff does not show that Revit was unimportant to Defendant, but only that Defendant was still in the early stages of implementing Revit.[27] Second, this evidence does not show that Defendant's proffered reasons for laying off Plaintiff rather than Ghahani were *discriminatory*.[28] In the absence of any evidence whatsoever that discrimination was the true cause of Defendant's decision to lay off Plaintiff, summary judgment is appropriate. *See Guz*, 24 Cal.4th at 361, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (stating that "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory").

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's First Cause of Action for unlawful discrimination under the FEHA.[29]

---

21. (Albert Decl., Ex. A, Deposition of Sanjay Pandya, Exs. 4–5.)

22. (Pandya Depo. at 254:13–17.)

23. (Opp'n at 15–16.)

24. (Pandya Depo. at 250:9–13; Landeros Decl. ¶ 14.)

25. Plaintiff concedes that Ghahani had experience with Revit. (*See, e.g.*, Opp'n at 6 (stating that Ghahani had taken a class on the use of Revit prior to being hired by Defendant and had used Revit in "all [her] design [school] projects").) Further, Plaintiff lacked experience with Revit. (*See* Fu Depo. at 235:22–24, 236:14–22.)

26. (Opp'n at 5.)

27. (*See, e.g.*, Pandya Depo. at 77:22–78:3 (stating that it currently takes Defendant's engineers "a little bit more time" to complete a project using Revit, because the engineers are still "learning the tools"); *id.* at 83:21–84:6 (same); Napior Depo. at 67:18–72:20 (a senior engineer at Defendant's San Francisco office stating that Revit is a "great tool" and is "useful in all [design] projects," though it is still in the "roll-out stages of use" in the San Francisco office).)

28. It might be argued that this evidence, seen in the light most favorable to Plaintiff, shows that Defendant made a poor decision when it decided to lay off Plaintiff rather than Ghahani, given the status of its Revit implementation program at the time and the fact that Defendant went on to lay Ghahani off a few months later. However, this argument would be unavailing under California law, which makes clear that an employer's reasons for making an employment decision may be "foolish," or "trivial," or "baseless," or "wrong," or "mistaken," so long as they are not discriminatory. *See Guz*, 24 Cal.4th at 358, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (citations omitted).

29. Plaintiff contends that her evidence in support of her Third Cause of Action, for unlawful retaliation under the FEHA, "is identical" to that she relies upon to show pretext in

### B. *Plaintiff's Claim for Failure to Provide Leave Under the PDLL*

██ Defendant contends that Plaintiff was not on PDLL-covered leave at the time of her layoff, which means that she was not protected by the statute at the time she was laid off. (Motion at 23.) Plaintiff responds that she and Defendant agreed that she would be reinstated to work on May 18, 2009, but she was terminated on March 17, 2009, which means that she was protected by the PDLL at the time of her layoff. (Opp'n at 18–21.)

California's Pregnancy Disability Leave Law [30] makes it unlawful for an employer to refuse to allow a female employee disabled by pregnancy, childbirth, or related medical conditions to take a leave for a reasonable period of time not to exceed four months and thereafter return to work. Cal. Gov.Code § 12945(a). Upon granting a pregnancy disability leave, an employer "shall guarantee to reinstate the employee to the same position, or ... to a comparable position." 2 Cal.Code Regs. § 7291.9(a). California law defines "pregnancy disability leave" as "any leave, whether paid or unpaid, taken by an employee, for any period(s) up to a total of four months during which she is disabled by pregnancy." *Id.* § 7291.2(*o* ). A woman is "disabled by pregnancy" if, in the opinion of her health care provider, she is unable because of pregnancy to work at all or is unable to perform any one or more of the essential functions of her job or to perform those functions without undue risk to herself, the successful completion of her pregnancy, or to other persons. *Id.* § 7291.2(g). It is unlawful for any employer to refuse to honor a guarantee of reinstatement unless the refusal is justified by certain specified defenses, including the defense that "the employee would not otherwise have been employed in her position at the time reinstatement is requested for legitimate business reasons unrelated to the employee taking a pregnancy disability leave." *Id.* §§ 7291.9(a) & (c)(1)(A). Such a defense must be proved by the employer by a preponderance of the evidence. *Id.* § 7291.9(c)(1).

Here, Defendant offers the following evidence in support of its contention that Plaintiff was not on pregnancy disability leave, and thus was not covered by the PDLL, on March 17, 2009,[31] the date on

---

support of her First Cause of Action. (Opp'n at 18.) Thus, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Third Cause of Action. Further, because Plaintiff's discrimination claim fails, her claim for failure to prevent discrimination also fails. *See, e.g., Rodriguez v. John Muir Medical Center,* No. 09–00731 CW, 2010 WL 3448567, at *14 n. 3 (N.D.Cal. Aug. 31, 2010). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Cause of Action. Additionally, because Plaintiff's discrimination claim fails, her claim for wrongful termination in violation of public policy also fails. *See Vallimont v. Chevron Energy Tech. Co.,* 2011 WL 1979483, at *2–3 (9th Cir. May 23, 2011). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Seventh Cause of Action. Finally, because Plaintiff's claim for discrimination fails, her claim for intentional infliction of emotion-

al distress fails, because the latter claim is predicated on the proposition that Plaintiff was discriminated against "in the workplace based on a FEHA protected characteristic." (Opp'n at 21.) Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Eighth Cause of Action.

30. The Pregnancy Disability Leave Law is a subdivision of the FEHA. *See, e.g., Cal. Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 275–76, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987).

31. The parties disagree as to the date on which Plaintiff was laid off. Plaintiff contends that she was laid off on March 17, 2009, the date on which an employee of Defendant called her to say that she had been laid off. (Opp'n at 20.) Defendant contends that Plaintiff was laid off on April 9, 2009, because when an employee of Defendant called Plain-

which she was laid off:

> Plaintiff was disabled by pregnancy, in the opinion of her doctor, until February 20, 2009.[32] Prior to going on maternity leave, Defendant agreed that Plaintiff could go on unpaid leave after her doctor released her to return to work, and that her unpaid leave would end on May 18, 2009. (*Id.* at 7.)

In response, Plaintiff offers evidence that she and Defendant "agreed that May 18, 2009 would be the date of Plaintiff's reinstatement" from leave.[33]

In light of the parties' conflicting evidence, the Court finds that there are material issues of fact regarding whether Plaintiff was covered by the PDLL at the time she was laid off. Defendant's reliance on *De Costa v. NorthStar Risk Management* is misplaced. *See* Reply at 11–12 (discussing *De Costa*, No. A118718, 2008 WL 4329288 (Cal.Ct.App. Sept. 23, 2008)). The plaintiff in *De Costa* took a leave which "exceeded the four-month maximum dictated by [the PDLL]," which, the court found, "disqualifie[d] her under the plain language of the statute." *Id.* at *10. Here, on either Plaintiff's or Defendant's account, Plaintiff was laid off less than four months after she began her leave. It is true that the *De Costa* court stated that the plaintiff's argument in that case "confuse[d] maternity leave with the disability leave protected by" the PDLL. *Id.* at *11. However, because the opinion in *De Costa*

was unpublished, the Court declines to rely on it as having precedential value.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Sixth Cause of Action under the PDLL.[34]

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment as follows:

(1) The Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's First, Third, Fourth, Seventh and Eighth Causes of Action.

(2) The Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Sixth Cause of Action under the PDLL and claim for punitive damages.

On **September 19, 2011 at 10 a.m.,** the parties shall appear for a Preliminary Pretrial Conference. On or before **September 9, 2011,** the parties shall submit a Joint Preliminary Pretrial Conference Statement including, *inter alia,* a good faith proposed schedule for trial.

---

tiff on March 17, 2009 to tell her that she was being laid off, she "requested that her layoff date be extended to April 9, 2009," and Defendant agreed. (Motion at 14.) For purposes of this Motion, the Court assumes that Plaintiff was laid off on the earlier date— March 17, 2009–as the Court's analysis is the same under either contention.

**32.** (*See* Albert Decl., Ex. E at 10.)

**33.** (Opp'n at 20; Fu Depo. at 185:22–186:20.)

**34.** In a civil action brought under the FEHA, "all relief generally available in noncontractual actions, including punitive damages, may be obtained." *Meninga v. Raley's, Inc.,* 216 Cal.App.3d 79, 88, 264 Cal.Rptr. 319 (Cal.Ct. App.1989). Accordingly, in light of the Court's disposition of Plaintiff's Sixth Cause of Action under the PDLL, which is a subdivision of the FEHA, Defendant's Motion for Summary Judgment as to Plaintiff's Claim for punitive damages is DENIED.